MARIBEL ADORNO QUILES, demandante y recurrente, *v.* ÁNGEL HERNÁNDEZ, también conocido como ÁNGEL "PELAYITO" HERNÁNDEZ, demandado y recurrido.

*Número:* RE-87-348      *Resuelto:* 26 de abril de 1990

*Francisco Valcárcel Mulero* y *Neftalí Fuster González*, abogados de la recurrente; *Gabriel I. Peñagarícano*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Maribel Adorno Quiles, demandante y recurrente, es manejadora de boxeadores. Suscribió un contrato con Ángel Hernández, conocido como "Pelayito" Hernández, el 28 de enero

de 1985. Mediante ese contrato, Hernández se obligó a prestar servicios de boxeador a la demandante de manera exclusiva por un período de cuatro (4) años. Transcurridos más de dos (2) años desde que se otorgó ese contrato, Hernández solicitó a través de su abogado que la manejadora lo liberara del contrato por razón de que la señora Adorno no había cumplido con su obligación de realizar sus oficios y ejercer sus conocimientos boxísticos a los fines de conseguirle encuentros de importancia económica y competitiva.

Hernández acudió a la Comisión de Boxeo Profesional de Puerto Rico (en adelante Comisión) para que ésta invalidara el contrato. La Comisión citó a una vista administrativa ante un oficial examinador. En la vista estuvieron presentes la señora Adorno, el señor Hernández, el Sr. Héctor Rivera y el Lcdo. Walter Alomar, abogado de la señora Adorno. Poco tiempo después de iniciada la vista compareció el Lcdo. Francisco Valcárcel, quien acudió a la vista en representación de la señora Adorno conjuntamente con el licenciado Alomar. Para el momento en que llegó el licenciado Valcárcel, el querellante había brindado su propio testimonio y el de un testigo. El licenciado Alomar había contrainterrogado a los testigos y presentado prueba en refutación de las alegaciones del querellante.

El licenciado Valcárcel, luego de identificarse como abogado de la señora Adorno, impugnó la jurisdicción de la Comisión para adjudicar la querella.

El día siguiente a la vista administrativa, 27 de marzo de 1987, la señora Adorno presentó demanda en el Tribunal Superior, Sala de San Juan, Civil Núm. 87–167(905), para que se declarara válido y vigente el contrato otorgado entre las partes.

"Pelayito" Hernández solicitó que se desestimara la acción por ser prematura en cuanto a su persona y por falta de jurisdicción para adjudicar la controversia, por estar la misma ante la consideración de un organismo administrativo a cuya jurisdicción se había sometido la demandante.

El tribunal desestimó la demanda. Señaló en su sentencia que la demandante se había sometido a la jurisdicción de la Comisión,

que se debían agotar los remedios antes de recurrir al foro judicial y que la demandante no alegó que la gestión administrativa es inútil, inefectiva, que no ofrece remedio adecuado o que habrá de causarle un daño irreparable o inminente. Expedimos el auto para revisar la sentencia.

A tenor con lo dispuesto en el Art. 7(f) y (j) de la Ley Orgánica del Departamento de Recreación y Deportes, Ley Núm. 126 de 13 de junio de 1980 (3 L.P.R.A. sec. 442f(f) y (j)), se le confiere al Secretario de Recreación y Deportes (en adelante Secretario) ciertas facultades, entre ellas:

> (f) Resolver querellas en torno a asuntos deportivos, que conforme a este Capítulo y los reglamentos adoptados en virtud del mismo sean de su jurisdicción . . . .
>
> .    .    .    .    .    .    .    .
>
> (j) Delegar en funcionarios subalternos las funciones que este Capítulo le confiere, excepto la de nombrar personal y de aprobar, enmendar o derogar reglas y reglamentos.

El Secretario creó la Comisión mediante el Reglamento de Boxeo Profesional (en adelante Reglamento). Éste enumera los actos sobre los cuales le ha sido conferida la jurisdicción a la Comisión. Entre otras, se le confirió la facultad para promover, supervisar y administrar el deporte de boxeo profesional en Puerto Rico. La Comisión tendrá, a su vez, facultad para entender y resolver asuntos relacionados con la cualificación, participación, aplicación de reglas, sanciones y derechos de los atletas respecto del deporte boxístico (Art. XXII, Sec. 3); para intervenir en la contratación de encuentros boxísticos, y para aprobar programas de boxeo (Art. V, Sec. 1).

Los contratos que se otorgan entre los boxeadores y apoderados se notifican y se presentan en la Comisión. El Art. XVIII del Reglamento exige a todo apoderado que tenga la autorización y licencia requerida por la Comisión para ejercer como tal y que registre ante la Comisión copia del contrato otorgado entre boxeador y apoderado.

Dentro de los deberes y responsabilidades de la Comisión se encuentra mediar en la solución de las controversias surgidas

entre los boxeadores, promotores, apoderados y padrinos o entrenadores (Art. V, Sec. 1(e)).

■ Por otro lado, el Art. XXVIII del Reglamento enumera los remedios o sanciones que puede emitir la Comisión. Ellas son las multas administrativas, las órdenes para cesar y desistir, y la cancelación, revocación o suspensión de cualquier autorización o licencia concedida en virtud del Reglamento. En los remedios citados no se menciona el intervenir o dejar sin efecto los contratos privados entre boxeador y apoderado. Existe una ausencia de facultad para proveer un remedio resolutorio de un contrato. Estamos ante una controversia contractual de naturaleza privada. El Art. III(5) del Reglamento nos define "apoderado" como: "Una persona natural que represente a un boxeador mediante *contrato privado* entre ambos el cual está aprobado por la Comisión y a quien se le haya expedido una licencia por ésta para actuar." (Énfasis suplido.) El propio artículo establece la naturaleza privada del contrato entre apoderado y boxeador. Como regla general, la facultad para interpretar los contratos es una cuestión de derecho que le corresponde resolver a los tribunales. La intervención de la Comisión y la facultad que se le confiere no se extiende hasta el punto de entrar a resolver si hubo incumplimiento contractual. Por lo tanto, la Comisión no posee jurisdicción para dilucidar este tipo de controversia.

El tribunal sentenciador determinó que la señora Adorno se había sometido a la jurisdicción de la Comisión y que no hubo desistimiento posterior.[1] No le asiste la razón. En primer lugar, el desistimiento de una acción le corresponde a la parte promovente. Por lo tanto, no es la parte promovida la que desiste de una causa de acción. En segundo lugar, el que se haya presentado un caso ante una agencia administrativa y se haya

---

[1] El Art. XXIII, Sec. 1 del Reglamento de Boxeo Profesional dispone lo siguiente: "'La sumisión de cualquier querella o controversia ante la Comisión es voluntaria y la emisión de sus decisiones de carácter rogado. Sin embargo, una vez iniciado el procedimiento, la Comisión podrá continuar el mismo y emitir una decisión en ausencia de cualquier parte a no ser que medie un desistimiento expreso.'" (Énfasis en el original suprimido.) Apéndice V, pág. 20.

celebrado parte de una vista no conlleva que se otorgue jurisdicción a una agencia cuando ésta no posee la facultad para dilucidar la controversia. Por otro lado, el procedimiento ante la agencia no se encontraba en una etapa avanzada que resultara en un choque contra la equidad el despojarla de su poder adjudicativo. *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978).(2)

■ En variedad de ocasiones hemos expresado que como regla general hay que agotar los remedios administrativos antes de acudir a los tribunales. *Vda. de Iturregui v. E.L.A.*, 99 D.P.R. 488 (1970); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *Rivera v. E.L.A.*, 121 D.P.R. 582 (1988).

Esta regla tiene como propósito que sean las agencias administrativas las que diluciden en primera instancia las controversias, ya que poseen pericia o *expertise* en la materia. Sin embargo, al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa. *Febres v. Feijoó*, 106 D.P.R. 676 (1978).

■ Es aplicable a nuestro caso lo resuelto en *Rivera v. E.L.A.*, supra, pág. 596, a los efectos de que "[t]ambién se puede omitir el trámite administrativo cuando la agencia claramente no tiene jurisdicción y la posposición conlleva un daño irreparable al afectado, o el asunto es estrictamente de derecho que no requiere unos conocimientos especiales de la agencia administrativa".

En este caso la controversia principal gira en torno a la validez y el cumplimiento del contrato otorgado entre las partes. La Comisión no posee conocimiento especializado para resolver este tipo de controversia contractual privada. No varía el resultado el hecho de que la decisión que pueda tomar en su día el tribunal

---

(2) En *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978), el promovente era el que pedía el desistimiento de un recurso administrativo de apelación. La Junta negó su petición y anunció que retendría su jurisdicción para resolver el asunto. El Tribunal entendió que la Junta no tenía facultad para intervenir en la elección de remedios de una parte. Tomó en consideración que el procedimiento ante la agencia no se encontraba en una etapa avanzada.

afecte indirectamente al deporte de boxeo profesional. La Comisión y los organismos deportivos análogos no son tribunales de justicia con facultades de adjudicar controversias privadas en las que no les corresponde hacer determinaciones factuales que se benefician de su conocimiento interno y especializado. *Febres v. Feijoó*, supra.

Por los fundamentos antes expresados, *se revoca la sentencia recurrida y se devuelve el caso al Tribunal Superior para ulteriores procedimientos.*

El Juez Asociado Señor Hernández Denton emitió opinión disidente, a la cual se une la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Negrón García y el Juez Asociado Señor Rebollo López no intervinieron.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Por entender que la Comisión de Boxeo Profesional de Puerto Rico (en adelante Comisión) tiene los conocimientos periciales y la facultad para adjudicar un conflicto contractual entre un boxeador profesional y su apoderado, disiento de la opinión mayoritaria.

En el caso de autos, Maribel Adorno Quiles y Ángel "Pelayito" Hernández suscribieron un contrato. En virtud de ese acuerdo, "Pelayito" Hernández se obligó a rendir sus servicios de boxeador profesional exclusivamente para la señora Adorno Quiles. Ella, por su parte, se comprometió a pagarle al boxeador un por ciento de las sumas de dinero que obtuviera como resultado de sus combates. La controversia específica en este caso gira en torno a la interpretación de la cláusula tercera del contrato, que dispone:

El Manejador del Boxeador se compromete a realizar sus buenos oficios y ejercitar sus *conocimientos boxísticos* a los fines de conseguirle *encuentros boxísticos de importancia remunerativa y competitiva* al Boxeador y éste se compromete a cumplir con los

compromisos boxísticos programados y acordados por el Manejador durante la vigencia de este contrato. (Énfasis suplido.) Apéndice IX, pág. 31.

"Pelayito" Hernández presentó una querella ante la Comisión en la que alegó que su representante había incumplido con su obligación de "conseguirle encuentros boxísticos de importancia remunerativa y competitiva". Se celebró una vista administrativa ante el Oficial Examinador Arturo C. Gallardo, a la que comparecieron ambas partes asistidas por abogados.

Al día siguiente, la señora Adorno Quiles presentó una demanda en el Tribunal Superior, Sala de San Juan, para solicitar que se declarara válido y vigente el contrato suscrito por las partes. En su acción, la apoderada no impugnó la facultad adjudicativa de la Comisión, pero negó que se hubiera sometido a su jurisdicción.

El boxeador demandado presentó una moción de desestimación en la que expuso que el tribunal carecía de jurisdicción para entender en la controversia, puesto que el asunto se encontraba sometido ante la Comisión. Luego de celebrar una vista y de considerar los memorandos de derecho sometidos por las partes, el Tribunal Superior desestimó la demanda. Es por motivo de esta sentencia que Adorno Quiles recurre ante este Foro.

## I

La validez constitucional de la delegación de poder adjudicativo a una agencia administrativa es un principio firmemente establecido en nuestro ordenamiento. *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230 (1987). En su función adjudicativa, las agencias administrativas deciden controversias mediante la aplicación de las normas de derecho vigentes a los hechos específicos del caso. "Parte esencial de reformas a los sistemas de justicia en muchas jurisdicciones. . . es el reconocimiento de que organismos no judiciales deben atender asuntos que hasta cierto tiempo se consideraron de la competencia

exclusiva de los tribunales." *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218, 223 (1974).

Al interpretar el alcance de los poderes delegados a la agencia administrativa, no debemos limitar el análisis a una interpretación restrictiva del estatuto habilitador. "La cuestión que nos ocupa debe examinarse dentro del amplio marco del desarrollo del derecho administrativo y de las nuevas corrientes en la administración de la justicia. *Es a veces difícil extraer el significado de un estatuto ateniéndonos tan sólo a sus términos escuetos, sin referencia a las circunstancias, advertibles por los tribunales, que lo producen.*" (Énfasis suplido.) *Hernández Denton v. Quiñones Desdier*, supra, pág. 220.

Un análisis integral de los propósitos y las disposiciones de la Ley Orgánica del Departamento de Recreación y Deportes (en adelante Ley Orgánica), Ley Núm. 126 de 13 de junio de 1980, según enmendada, 3 L.P.R.A. sec. 442 *et seq.*, revela que a este departamento se le concedieron amplios poderes para fomentar, reglamentar y fiscalizar la programación de todas las actividades recreativas y deportivas en Puerto Rico:

> (a) Reglamentar, fomentar y supervisar todas las actividades de recreación y deportes, públicas y privadas, profesionales o aficionadas que se celebren en Puerto Rico.
>
> . . . . . . . .
>
> (f) *Resolver querellas* en torno a asuntos deportivos, que conforme a este Capítulo y los reglamentos adoptados en virtud del mismo sean de su jurisdicción y proveer ayuda, asesoramiento técnico o de cualquier otra naturaleza a cual[es]quiera personas que quieran organizar, fomentar, promover y celebrar actividades dentro de los propósitos de este Capítulo.
>
> . . . . . . . .
>
> (i) Interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de este Capítulo y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento.
>
> . . . . . . . .
>
> (s) Realizar todos aquellos actos necesarios y convenientes para el logro más eficaz de los propósitos de este Capítulo. (Énfasis suplido.) 3 L.P.R.A. sec. 442f.

La Ley Orgánica no sólo delega en el Secretario de Recreación y Deportes (en adelante Secretario) la facultad de "resolver querellas en torno a asuntos deportivos", sino que reconoce también expresamente que tendrá *jurisdicción primaria exclusiva* para adjudicar toda controversia o querella incoada:

> En el ejercicio de las facultades *adjudicativas* que por este Capítulo se le confieren, el Secretario *tendrá jurisdicción primaria para entender en toda querella o controversia* incoada al amparo de las disposiciones del mismo. A tales efectos, el Secretario podrá designar examinadores cuya función será presidir las vistas públicas administrativas que se celebren por el Departamento. (Énfasis suplido.) 3 L.P.R.A. sec. 442m.

Para complementar sus poderes adjudicativos, la Asamblea Legislativa otorgó al Secretario facultad para "[p]revia notificación y vista, imponer multas administrativas por las violaciones a este Capítulo, sus reglamentos y órdenes emitidas de acuerdo a las disposiciones [de la ley]". 3 L.P.R.A. sec. 442n(a). También le autorizó a "[e]mitir órdenes para cesar y desistir cualquier acción o actividad . . . y prescribir los términos y condiciones correctivas que crea necesarios para el logro de los propósitos de este Capítulo". 3 L.P.R.A. sec. 442n(b).

En vista de los poderes adjudicativos delegados en el Secretario, la ley estableció un procedimiento de revisión judicial fundado en la premisa de que corresponde inicialmente al Secretario en vista *adjudicativa* el hacer determinaciones de hecho que serán concluyentes si están sostenidas por evidencia sustancial. 3 L.P.R.A. sec. 442q(e).

El Art. 11 de la Ley Orgánica, 3 L.P.R.A. sec. 442j, autoriza, además, al Secretario de ese departamento a aprobar los reglamentos que sean necesarios para cumplir con la política pública que se establece mediante el estatuto. En virtud de esta facultad, el Secretario promulgó el Reglamento de Boxeo Profesional (en adelante Reglamento), que establece la Comisión adscrita a la Oficina del Secretario. Por la naturaleza del boxeo, la Comisión tiene extensos poderes para administrar, reglamentar, dirigir y supervisar este deporte. El Reglamento requiere que toda per-

sona que desee desempeñarse como "[boxeador o] apoderado, promotor, árbitro, juez, cronometrista, padrino y concertador de encuentros", obtenga una licencia de la Comisión (Arts. XII y VIII). Por otro lado, el Reglamento exige que los contratos que se hagan entre apoderados y boxeadores se inscriban en la Comisión (Art. XVIII).

En vista de la naturaleza tan particular del pugilismo, y conscientes de que en el boxeo se generan controversias que requieren una adjudicación rápida por parte de una entidad reguladora, peritaje y experiencia necesaria, el Secretario delegó en la Comisión tanto la facultad adjudicativa primaria de "entende[r] en toda querella o controversia que envuelva el boxeo profesional" (Art. VI), como el poder de conceder, suspender o revocar las licencias de todos los boxeadores, promotores y oficiales del deporte:

> La Comisión tendrá facultad para entender y resolver, sin que se entienda como una limitación, en controversias relacionadas entre otras con la cualificación, participación, aplicación de reglas, sanciones y derechos de atletas respecto del deporte boxístico, y de éste con tales atletas, a los propósitos de *dirimir* dichas controversias, en beneficio e interés del deporte y en armonía con los principios elementales de justicia y equidad. (Énfasis suplido.) Art. XXII, Sec. 3.

Al amparo de este poder, le corresponde a la Comisión "entender y resolver" controversias como la del caso de autos. Examinado el alcance de la ley habilitadora y la reglamentación detallada del pugilismo, es evidente que la Asamblea Legislativa utilizó el vocablo "entender" en su acepción de "juzgar o de tener una autoridad, facultad o jurisdicción para conocer de materia determinada". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 562. María Moliner, en su *Diccionario de Uso del Español*, Madrid, Ed. Gredos, 1977, pág. 1140, ratifica esta interpretación al describir que uno de los usos más comunes de la palabra significa tener "determinada autoridad" sobre una materia. Incluye, por ejemplo, la autoridad conferida a un juez para ocuparse de cierto asunto o para intervenir en él.

Tomando en cuenta que la Asamblea Legislativa ha decidido reglamentar extensamente el deporte del boxeo, es imperativo que el organismo creado específicamente para llevar a cabo esta función (la Comisión) tenga facultad adjudicativa para entender por lo menos en primera instancia en controversias como la de autos. La intervención de los tribunales debe limitarse a revisar las decisiones del organismo especializado que reglamenta el deporte.

Por esta razón, discrepamos de la conclusión a que llega la mayoría del Tribunal de que la Comisión no tiene jurisdicción para intervenir en un conflicto contractual entre un boxeador y su apoderado. Si los contratos entre ellos tienen que estar inscritos en la Comisión, procede también que sean ellos los que en primer lugar interpreten el alcance de las cláusulas referentes a sus obligaciones dimanantes del deporte.

Al requerir una concesión expresa de poder de adjudicación, el Tribunal utiliza la máxima *Expresio Unius est Exclussio Alterius* para evaluar las facultades de la entidad. Esta regla "[d]ebe aplicarse con gran cuidado porque no es de aplicación universal. No es absoluta, pues su fin primordial es determinar la intención legislativa, y, cuando esta intención surge de otra manera, no debe utilizarse como medio de interpretación si su aplicación está en pugna con el pensamiento del legislador". R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, pág. 346.

En este caso, de la Ley Orgánica surge que la Asamblea Legislativa creó un departamento con amplios poderes para promocionar, reglamentar y fiscalizar los deportes en Puerto Rico. Todo el ordenamiento deportivo requiere unos mecanismos adjudicativos especializados que resuelvan rápidamente las múltiples controversias técnicas que surgen en todas las actividades atléticas. La opinión del Tribunal ignora estas necesidades inherentes al deporte y tiene el resultado de debilitar una comisión especializada que hasta ahora ha tenido la responsabilidad primaria de fiscalizar el boxeo.

202

La determinación de si la señora Adorno Quiles ejerció o no sus conocimientos boxísticos para conseguirle al boxeador "encuentros de importancia económica y competitiva" requiere de la pericia o *expertise* de la Comisión. Por estar pendiente ante ésta la reclamación del boxeador y al no haberse agotado los remedios administrativos, en esa etapa de los procedimientos no procedía la intervención del foro judicial. *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 722–723 (1982); *Febres v. Feijoó*, 106 D.P.R. 676, 681 (1978).

Por los fundamentos expuestos, confirmaría la sentencia dictada por el Tribunal Superior, Sala de San Juan.