López Feliciano, Juez Ponente
*1208 TEXTO COMPLETO DE LA SENTENCIA
El recurrente Heriberto Muñiz Cabán nos solicita que revoquemos una resolución de la Junta de Síndicos (en adelante la Junta) de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante Retiro), dictada el 19 de agosto de 2004, archivada en autos y notificada el 4 de octubre de 2004. Mediante dicha resolución, la Junta revocó una previa determinación de Retiro en la que se le había denegado al recurrente una anualidad por incapacidad ocupacional; en apelación, la Junta le concedió los beneficios de una anualidad por incapacidad no ocupacional. Arguye el recurrente en su solicitud de revisión que deben concedérsele los beneficios de una pensión por incapacidad ocupacional.
Presentada por el recurrente la solicitud de revisión judicial, requerimos a la parte recurrida que expresara su posición sobre el recurso instado, lo que oportunamente hizo a través de la Oficina del Procurador General de Puerto Rico. Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso.
I
Hechos e Incidentes Procesales Pertinentes
El recurrente, de cuarenta y ocho (48) años de edad, se desempeñó por veintitrés años en el Cuerpo de Bomberos de Puerto Rico. Realizaba funciones de Inspector de Incendios III y durante esos años cotizó al Sistema de Retiro. Mientras trabajó en dicha dependencia sufrió tres accidentes, los cuales fueron relacionados con el trabajo por el Fondo del Seguro del Estado (en adelante el Fondo), a saber:

“Un primer accidente ocurrió el 11 de abril de 1987, mientras participaba en un juego de “sofball” a nivel integral. Como resultado de este accidente, sufrió una lesión en la espalda. El Fondo le diagnóstico “esguince lumbar, una hernia núcleo pulposo a nivel L4-L5; L5-S1, una radiculopatía bilateral L5-S1”, por lo que le reconoció una incapacidad parcial permanente orgánica de un cuarenta y cinco por ciento (45%) de sus funciones fisiológicas principales.

Un segundo accidente ocurrió el 10 de septiembre de 1997; mientras realizaba una llamada telefónica en su lugar de trabajo se cayó de la silla de la cual estaba sentado, lesionándose las rodillas y la frente. Como resultado de este accidente, el Fondo le diagnóstico contusión frontal, “esguince cervical, contusión de la rodilla derecha y meniscoectomía lateral del menisco derecho, ” por lo que le reconoció una incapacidad parcial permanente orgánica de un quince por cierto (15%) de sus funciones fisiológicas generales.

El tercer y último accidente laboral del recurrente ocurrió el 14 de octubre de 1999; mientras bajaba las escaleras de su lugar de trabajo, resbaló sintiendo un fuerte dolor en la rodilla izquierda. El Fondo le diagnosticó “esguince de la rodilla izquierda, desgarre del menisco medio y del menisco lateral y desorden-depresivo mayor”, por lo que le reconoció una incapacidad permanente orgánica de un veinte por ciento-(20%) de sus funciones fisiológicas generales y un cinco por ciento (5%) de incapacidad parcial permanente en sus 
*1209
funciones fisiológicas generales por concepto de la condición emocional desarrollada. ”

El 11 de julio de 2000, el recurrente solicitó de Retiro que se le concedieran los beneficios de una anualidad por incapacidad ocupacional, al amparo de la Ley Núm. 447 de 15 de mayo de 1951, 3 L.P.R.A. see. 761 et seq. Fundamentó su solicitud en la alegación de que estaba incapacitado permanentemente por su condición de discos herniados, lesión cervical, radiculopatía en ambas rodillas, osteoartritis degenerativa y meniscos rotos en ambas rodillas.
El 14 de diciembre de 2001, Retiro comunicó al recurrente su denegatoria a la solicitud de incapacidad ocupacional. Con esta decisión, Retiro le informó que de los informes médicos que constaban en su poder relativos a su condición física había determinado que aún estaba física y mentalmente capacitado para desempeñar labores en el servicio público; expuso, como razón adicional, que las condiciones establecido por el Fondo no relacionadas con el trabajo, también habían sido evaluadas, pero que las mismas no eran incapacitantes.
El 20 de diciembre de 2001, el recurrente solicitó a Retiro que reconsiderara su decisión, denegándole los beneficios de incapacidad solicitados. El 19 de mayo de 2003, Retiro denegó la reconsideración solicitada y se reiteró en que la evidencia médica en el expediente del recurrente no demostraba que estuviera total y permanentemente incapacitado, a pesar de las condiciones que le aquejaban.
A tenor con el procedimiento administrativo pertinente, el 3 de junio de 2003, el recurrente presentó un escrito de apelación ante la Junta, reiterando su alegación de que estaba incapacitado permanentemente, ya que el Fondo le había otorgado una incapacidad total.
En resolución del 19 de agosto de 2004, archivada en autos y notificada a las partes el 4 de octubre siguiente, la Junta revocó la determinación de Retiro y le concedió al recurrente los beneficios de una incapacidad no ocupacional.
El 22 de octubre de 2004, el recurrente presentó una moción de reconsideración a la Junta de la determinación mediante la cual se le habían concedido los beneficios de una incapacidad no ocupacional. Apoyó la reconsideración solicitada en la alegación de que cumplía a cabalidad con todos los requisitos para que se le concediera una anualidad por incapacidad ocupacional; y que padecía de una serie de enfermedades físicas y mentales que le incapacitaban totalmente para desempeñarse en sus funciones de Inspector de Prevención de Incendios del Cuerpo de Bomberos.
Presentada la solicitud de reconsideración, la Junta no consideró la misma. En consecuencia, oportunamente, el recurrente presentó ante este foro apelativo el recurso que nos ocupa.
II
Cuestión Planteada
Del señalamiento de errores que hace el recurrente, debemos resolver si la Junta, al denegarle a éste los beneficios de una anualidad por incapacidad ocupacional, actuó de manera ilegal, arbitraria o irrazonable; o si por el contrario, su determinación administrativa está sustentada por evidencia sustancial contenida en el expediente administrativo.
III
Análisis de la Cuestión Planteada y Conclusiones de Derecho
*1210 -A-
EI Derecho v la Reglamentación Aplicable al Retiro por Incapacidad
El Sistema de Retiro para los empleados del Estado Libre Asociado de Puerto Rico se rige por la Ley Núm. 447,supra.
En materia del retiro por causa de incapacidad, se dispone en los artículos 9, 10 y 11, de la Ley Núm. 447, supra, 3 L.P.R.A. sees. 769-771, lo siguiente:

“Artículo - 9

Todo participante que, como resultado de una incapacidad que se orisine por causa del empleo y surja en el curso del mismo, quedare incavacitado vara el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:

(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.

(b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.

(c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.

(d) El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud, (Subrayado nuestro)

Artículo -10

Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare vara el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado vara cumplir los deberes de cualquier careo que en el servicio del vatrono se le hubiere asisnado. tendrá derecho a una anualidad por incapacidad no ocupacional. El retiro del participante tendrá lugar a petición o solicitud suya o a petición del jefe de su departamento u oficina, mientras esté en servicio el mencionado participante, y de acuerdo con las reglas sobre anualidades por incapacidad provistas en el artículo 11 de esta ley.... (Subrayado nuestro)

Artículo -11

Para los ñnes de una anualidad por incapacidad ocupacional o no ocupacional. se considerará incavacitado a un participante cuando la incapacidad esté sustentada con suficiente vrueba médica conforme a los criterios que mediante reglamento fije el Administrador y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asisnado. El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico”. (Subrayado nuestro)
*1211 En el ámbito administrativo, Retiro ha adoptado ciertas reglas para poner en vigor las disposiciones de la Ley Núm. 447, supra. Se trata del Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930 de 25 de junio de 1993. 
La Regla 24 de dicho cuerpo reglamentario, al cubrir lo relacionado con las pensiones por incapacidad ocupacional, establece que para tener derecho a una pensión, se tiene que cumplir con ciertos requisitos. La Regla 24.2 enumera los mismos de la siguiente manera:

“(a) que el participante esté en el servicio activo a la fecha de radicación de la solicitud;

(b) que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante;

(c) que el Fondo del Seguro del Estado haya determinado que la condición incapacitante esté relacionada con el empleo del participante y es compensable; y

(d) que el participante o su patrono notifique dicha incapacidad por escrito al Administrador, dentro de los (6) meses siguientes a la fecha en que el Fondo... haya determinado que la condición incapacitante está relacionada con el empleo del participante”.

En materia de incapacidad no ocupacional, la Regla 25.3 del Reglamento dispone que:

“Para tener derecho a una pensión por incapacidad no ocupacional, el participante deberá cumplir con los siguientes requisitos:

(a) tener por lo menos diez (10) años de servicios acreditables;

(b) estar en servicio activo a la fecha de radicación de la solicitud;

(c) que la incapacidad física o mental no haya sido provocada por hábitos viciosos, intemperancia o mala conducta;

(d) que se reciba sufíciente prueba de la incapacidad del oarticivante. que demuestre que está incapacitado total y permanentemente vara cumplir con los deberes de cualquier cargo que en el servicio del patrono se le hubiese asisnado o vara trabajar en cualquier clase de emvleo retribuido, por lo menos con una retribución isual a la que tenía derecho a estar percibiendo estando en servicio activo.” (Subrayado nuestro)
La Regla 24.4 del mismo Reglamento define con precisión cuándo se considerará a un participante incapacitado, al disponer lo siguiente:
“Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos (“Adult Listings”) establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado de cumplir los deberes de cualquier careo que su vatrono le hubiere asisnado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos isual a la que esté percibiendo”. (Subrayado nuestro)
*1212 La Regla 25 establece las normas para la concesión de pensiones por incapacidad no ocupacional. La Regla 25.1 define este tipo de incapacidad de la siguiente manera:
“Todo participante que se inhabilite total y permanentemente para el servicio por causas no relacionadas con el empleo, tendrá derecho a solicitar una anualidad por incapacidad no ocupacional(Subrayado nuestro)
Finalmente, la Regla 25.4, en esencia, define lo que habrá de considerarse como incapacidad, cuando dispone en lo pertinente que:
Se considerará capacitado al participante, si no está total v permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier careo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo (Subrayado nuestro)
-B-
E1 Derecho Aplicable a la Revisión de las Determinaciones de Agendas Administrativas
La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que éstas desempeñan sus funciones conforme a la Ley. Torres Acosta v. Junta, 161 D.P.R. _ (2004), 2004 J.T.S. 71; Miranda v. C.C.C., 141 D.P.R. 775, 786 (1996). De ahí, que la revisión judicial debe limitarse a determinar si la agencia actuó arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituye un abuso de discreción. Torres Acosta v. Junta, supra; Franco v. Departamento de Educación, 148 D.P.R. 703, 710(1998).
Las conclusiones e interpretaciones de las agencias administrativas especializadas merecen gran consideración y respeto por los Tribunales. Otero v. Toyota, _ D.P.R. _ (2005), 2005 J.T.S. 13; O.E.G. v. Igartúa de la Rosa, 157 D.P.R. _ (2002), 2002 J.T.S. 120; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 72 (2000); M&V Orthodontics v. Negdo. de Seguridad de Empleo, 115 D.P.R. 183, 188 (1984).
La revisión judicial de las determinaciones de hechos de las agencias administrativas está limitada por lo establecido en la sección 4.5 de la Ley de Procedimiento Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2175. De acuerdo con esta disposición, las determinaciones de hechos formuladas por las agencias administrativas serán sostenidas por los Tribunales, si están apoyadas por evidencia sustancial que obra en el expediente administrativo. No obstante, las conclusiones de derecho son revisables en todos sus aspectos. Torres Acosta v. Junta, supra; O.E.G. v. Román González, 159 D.P.R. _ (2003), 2003 J.T.S. 74; Miranda v. Comisión Estatal de Elecciones, 141 D.P.R. 775, 787 (1996).
La facultad de revisión judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba; y (3) si las conclusiones de derecho del organismo administrativo son correctas. Sec. 4.5 de la Ley Núm. 70, supra; P.R.T.C. v. J. Reg. Tel. de P.R. 151 D.P.R._ (2000), 2000 J.T.S. 98; Mun. de S.J. v. J.C.A., 149 D.P.R. 263, 279-280 (1999); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 674 (1997). El récord o expediente administrativo constituirá la base exclusiva para la acción de la agencia en un procedimiento adjuticativo y para la revisión judicial ulterior. Torres Acosta v. Junta, supra; Mun. de S.J. v. J.C.A., supra, pág. 280.
Es norma reiterada que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo. Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Asoc. Vec. H. San Jorge v. U. Med. Corp., supra, pág. 72; E.L.A. et als. v. Malavé, 157 D.P.R. _ (2002), 2002 J.T.S. 103; Domínguez v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397 (1999); T. JAC, Inc. v. Caguas Centrum *1213 Limited, 148 D.P.R. 70, 80 (1999).
El criterio bajo el cual un tribunal debe revisar las determinaciones de hechos e interpretaciones de una agencia administrativa, es el criterio de razonabilidad. Fuertes y otros v. A.R.P.E., 134 D.P.R., 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). “Ahora bien, en armonía con la finalidad perseguida, la revisión judicial de decisiones administrativas debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción”. Rebollo Vda. de Liceaga v. Yiyi Motors, supra.
Así pues, al realizar su función revisora, el tribunal esta compelido a considerar la especialización y experiencia a la agencia sobre las cuestiones que tuviera ante sí. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa. La deferencia reconocida no equivale a la renuncia de la función revisora del tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 94 (1987).
Por otro lado, "al evaluar los casos, es necesario distinguir entre cuestiones de interpretación estatutaria, en las que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa. ” Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Adorno Quiles v. Hernández, 126 D.P.R. 191, 195 (1990); véanse además, Quiñones v. San Rafael Estates, 143 D.P.R. 756, 774 (1997); Fuertes y otros v. A.R.P.E., supra, pág. 953.
Finalmente, sobre este tema, el foro judicial puede sustituir el criterio del organismo administrativo por el propio, únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. Rebollo Vda. de Liceaga v. Yiyi Motors, supra. "No obstante, es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio.” Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Dye Tex de P.R. v. Royal Ins. Co., 150 D.P.R. 658, 660 (2000).
IV
Discusión y Análisis de los Asuntos Planteados
Sobreponiendo lasnormas de derecho antes expuestas a los hechos del presente caso, es ineludible concluir que las determinaciones de hechos de la recurrida están sostenidas por la prueba recibida por la Junta y las conclusiones de derecho a que ésta llegó son correctas. El recurrente no ha demostrado, con base en la prueba presentada, que la determinación denegatoria de los beneficios por incapacidad ocupacional y la concesión de una incapacidad de naturaleza no ocupacional no está justificada por una evaluación justa del peso de la prueba que la recurrida tuvo ante su consideración. Rebollo Vda. de Liceaga v. Yiyi Motors, supra. Veamos.
De la resolución emitida por la Junta, se desprende, en primer lugar, los informes médicos y de la evidencia que fuera considerada al momento de evaluar la elegibilidad del recurrente para los beneficios de una pensión. Un ponderado análisis, como el que hiciera la Junta en su resolución, refleja que el recurrente ha sufrido varios accidentes y padecimientos desde el año 1987 hasta el año 1999, la mayoría ocurridos en el área de trabajo que le merecieron recibir tratamiento en el Fondo del Seguro del Estado.
Al determinar la concesión de una incapacidad no ocupacional en el caso de autos, la Junta reconoció la existencia de una combinación de condiciones que aquejan al recurrente, que lo incapacitan para desempeñarse en una labor remunerativa. Tomó en cuenta la Junta que el recurrente presenta un diagnóstico de obesidad, que tiene un impacto directo en su condición de las rodillas, por lo que no puede estar mucho tiempo de pie ni sentado, sufriendo adormecimiento en sus extremidades y dolores en la espalda. De otro lado, los síntomas moderados del *1214 apelante en los aspectos emocionales, no justifican una determinación de incapacidad por condición emocional.
Todo lo anterior, llevó a la Junta a concluir que al combinar las condiciones del recurrente relacionadas con el trabajo con las no relacionadas, como lo son la condición emocional, la obesidad y una condición de alta presión, en unión a un padecimiento de escoliosis lumbar, procedía una determinación de incapacidad no ocupacional.
Examinadas las porciones del expediente administrativo sometido por las partes a nuestra consideración, concluimos que no se justifica la revocación de la resolución de la cual se recurre. Torres Acosta v. Junta, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.
Como se establece en la normativa legal antes reseñada, el Artículo 11 de la Ley Núm. 447, supra, impone criterios estrictos para determinar cuándo un empleado está total y permanentemente incapacitado para cumplir con los deberes de un cargo; criterios que puedan ser más rigurosos que los requisitos de la Administración Federal de Seguro Social, la Corporación del Fondo del Seguro del Estado o los de cualquier otro organismo con propósitos remediales.
Un examen del expediente administrativo en este caso demuestra que la conclusión de que al recurrente debe concedérsele una anualidad por incapacidad no ocupacional, encuentra amplio apoyo en evidencia sustancial. La Junta consideró las evaluaciones médicas realizadas por los especialistas y sostuvo que los padecimientos alegados por el recurrente no ameritan una pensión o anualidad por incapacidad ocupacional. También tomó en cuenta la evidencia médica presentada por el recurrente, el propio testimonio de éste y la totalidad del expediente del caso. Por tanto, debemos deferencia a dicho dictamen. Fuertes y otros v. A.R.P.E., supra; Murphy Bernabé v. Tribunal Superior, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.
V
Disposición del Recurso
Por los fundamentos antes expuestos, se confirma la resolución de la de Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno, dictada el 19 de agosto de 2004, mediante la cual se concedió a la recurrente una anualidad por incapacidad no ocupacional.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 63
1. Para las fechas en que el recurrente solicitó y Retiro le denegó una pensión por incapacidad ocupacional, estaba vigente el Reglamento Núm. 4930. Posteriormente, el 7 de noviembre de 2003, la Administración de los Sistemas de Retiro promulgó el Reglamento para la Concesión de Pensiones por Incapacidad a lo(a)s Participantes de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, Núm. 6719. Este Reglamento derogó parcialmente el núm. 4930.
2. El listado de los criterios médicos para determinar incapacidad se define en este Reglamento, donde se incorpora por referencia el Apéndice I (‘'Adult Listings”) de los listados conteniendo criterios médicos para determinar incapacidad (Social Security) Regulations: Ruler for Determining Disability, 20 CFR 404 Subt. 1, aprobado bajo las disposiciones del Título II de la Ley Federal de Seguro Social, según enmendada.