ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **LUIS D. VALDÉS MELÉNDEZ**<br>RECURRENTE(S)<br><br>V.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**<br>RECURRIDA(S) | **KLRA202300624** | ***Revisión de Decisión Administrativa***<br>procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.<br>**B705-45068**<br><br>Sobre:<br>Clasificación de Custodia |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 31 de enero de 2024.

Comparece ante nos el señor **LUIS D. VALDÉS MELÉNDEZ** (señor **VALDÉS MELÉNDEZ**), por derecho propio e *in forma pauperis*, mediante *Solicitud de Revisión Administrativa sobre Clasificación de Custodia* instada el 15 de noviembre de 2023. En su recurso, nos solicita que revisemos la determinación contenida en la *Resolución* del Comité de Clasificación y Tratamiento (CCT) del Departamento de Corrección y Rehabilitación (DCR) decretada el 25 de septiembre de 2023.[1] En su determinación, el CCT ratificó la custodia mediana.

A continuación, exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**- I -**

El 6 de marzo de 2012, el señor **VALDÉS MELÉNDEZ** fue sentenciado a ciento noventa y nueve (199) años de reclusión por los delitos de

---

[1] Véase Apéndice de la *Moción en Cumplimiento de Resolución*, págs. 1- 9.

Número Identificador:  SEN2024_____

asesinato en primer grado; tentativa de asesinato en primer grado; conspiración; y violaciones a la Ley de Armas de Puerto Rico.

Posteriormente, el 25 de septiembre de 2023, el señor **VALDÉS MELÉNDEZ** fue evaluado por CCT y se determinó ratificar la custodia mediana. El señor **VALDÉS MELÉNDEZ** presentó una *Solicitud de Reconsideración sobre Clasificación de Custodia*.[2] El 13 de octubre de 2023, el DCR dispuso no acoger la solicitud de reconsideración.[3] El 14 de noviembre de 2023, la determinación administrativa fue notificada al señor **VALDÉS MELÉNDEZ.**

Insatisfecho, el 15 de noviembre de 2023, el señor **VALDÉS MELÉNDEZ** presentó *Solicitud de Revisión Administrativa sobre Clasificación de Custodia* ante este Tribunal de Apelaciones. En dicho escrito, esboza los siguientes señalamientos de error:

> Erró el Comité de Clasificación y Tratamiento al ratificar la custodia mediana del Sr. Valdés Meléndez utilizando como único fundamento la Modificación Discrecional "Gravedad del Delito".
>
> Erró el Comité de Clasificación y Tratamiento al mencionar y utilizar un Informe sobre Querella Disciplinaria como argumento para ratificar la custodia mediana que data de más de 9 años de antigüedad.

El 15 de diciembre de 2023, pronunciamos una *Resolución* concediendo un plazo de treinta (30) días para exponer su posición sobre este recurso al **DCR.** El 17 de enero de 2024, el Departamento de Corrección y Rehabilitación, representado por el Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Resolución.*

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar el error señalado. A continuación, exponemos las normas de derecho pertinentes a la controversia planteada.

**- II -**

**A.      Revisión Administrativa**

---

[2] Véase Apéndice de la de la *Moción en Cumplimiento de Resolución*, págs. 10- 12.
[3] *Id.*, págs. 13- 15.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[4] Su sección 4.1 establece la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[5]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[6] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[7] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[8]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que sus conclusiones e interpretaciones merecen gran consideración y respeto.[9] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[10]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[11] Particularmente, concretó las normas básicas sobre el alcance de la revisión judicial al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o

---

[4] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA §§ 9601-9713. *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[5] 3 LPRA § 9671.
[6] *Torres v. Junta Ingenieros,* 161 DPR 696, 707 (2004).
[7] *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[8] *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).
[9] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016).
[10] *Adorno Quiles v. Hernández,* 126 DPR 191, 195 (1990).
[11] *Torres Rivera v. Policía de PR, supra.*

interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la revisión de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo; y (3) si las conclusiones de derecho fueron las correctas.[12]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado e su totalidad.[13] *Evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[14] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[15] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[16] A esto se le conoce como la norma de la *evidencia sustancial,* con lo cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[17] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[18]

---

[12] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[13] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[14] *Otero v. Toyota, supra*, pág. 728.
[15] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[16] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).
[17] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[18] *Íd.*

Además, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[19] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[20]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[21] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[22]

### B.     Reclasificación de Custodia

En nuestro estado de gobierno, se ha establecido como política pública la reglamentación de las instituciones penales, a los fines de que sirvan efectivamente a su propósito, y faciliten el tratamiento adecuado de su población, de modo que, haga posible su rehabilitación moral y social.[23] Acorde a ello, se creó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación*.[24] En consonancia, se instituyó un sistema para ingresar, procesar y asignar a los reclusos a las distintas instituciones y programas de rehabilitación disponibles. A su vez, por conducto del *Manual de Clasificación de Confinados* (*Manual*), se creó una nueva herramienta reglamentaria que comenzó a regir a partir de 20 de febrero de 2020, que uniforma el trámite para determinar las clasificaciones de custodia de los recluidos.[25]

---

[19] *Rebollo v. Yiyi Motos,* 161 DPR 69, 77 (2004).
[20] *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1002 (2011).
[21] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008).
[22] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.
[23] Constitución del Estado Libre Asociado de Puerto Rico, Artículo VI, Sección 19.
[24] Plan de Reorganización Núm. 2 de 21 de noviembre de 2011; 3 LPRA Ap. XVIII; Creado al amparo de la Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009, Núm. 182–2009.
[25] Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 de 22 de enero de 2020.

El *Manual*, define la clasificación de los reclusos como "la separación sistemática y evolutiva de éstos en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad…".[26] Su propósito es determinar cuán apropiada es la asignación de custodia de la persona en ese momento, según su proceso de adaptación.[27] Para cumplir con ello, el *Manual* estableció un Comité de Clasificación y Tratamiento (CCT) en cada una de las instituciones del DCR. Dicho ente, tiene como función principal evaluar las necesidades, aptitudes, limitaciones y funcionamiento social de los reos sentenciados. Además, es el organismo encargado de evaluar, reevaluar, recomendar y asignar los niveles de custodia de cada miembro de la población penal. Para cumplir con ello, los Comités se encargan de llevar a cabo revisiones periódicas de los niveles actuales de cada confinado para determinar cuán apropiada es dicha clasificación.[28] Ello se conoce como el proceso de reclasificación.

En concreto, el proceso de reclasificación es uno similar a la evaluación inicial de custodia, "pero recalca aún más la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión".[29] En ese sentido, el *Manual* destaca la importancia de que los prisioneros que se encuentren cumpliendo sentencias prolongadas, "tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución."[30] Es menester puntualizar, que la reevaluación de custodia no necesariamente tiene como resultado un cambio de clasificación de custodia o vivienda asignada.[31] Su objetivo principal es continuar "la adaptación del confinado y señalar los problemas que puedan surgir."[32]

---

[26] *Íd*, Acápite I.
[27] *Íd*.; *López Borges v. Adm. Corrección*, 185 DPR 603 (2012).
[28] La revisión del nivel de custodia de los encarcelados clasificados en custodia máxima se lleva a cabo cada seis (6) meses, luego de que hayan estado un (1) año en custodia máxima, mientras que el nivel de custodia de los confinados clasificados en custodia mínima y mediana se lleva a cabo anualmente. Reglamento 9151, *supra*, Acápite I de la Sección.
[29] *Íd*., Acápite II de la Sección 8.
[30] *Íd*.
[31] *Íd*., Acápite I de la Sección 7.
[32] *Íd*., Apéndice K, Acápite I(A).

Para llevar a cabo las reclasificaciones periódicas, el *Manual* adoptó como formato de evaluación el *Formulario de Reclasificación de Custodia.*[33] Conforme al mismo, el proceso de reclasificación exige un análisis de criterios tanto objetivos como subjetivos que requieren del conocimiento especializado del DCR. Como parte del análisis subjetivo de la clasificación de custodia de los confinados se consideran, entre otros, los siguientes: el carácter y actitud del recluido; los ajustes institucionales; y la relación del recluido con la población penitenciaria y con el personal correccional. Por su parte, la evaluación objetiva de la clasificación del recluso deberá tomar en cuenta los siguientes factores, a los que se les ha asignado una puntuación fija: la gravedad de los cargos/sentencias actuales; el historial de delitos graves anteriores; el historial de fuga; el número de acciones disciplinarias; la acción disciplinaria más seria; las sentencias anteriores por delitos graves como adulto; la participación en los programas institucionales; y, la edad actual del reo.

En adición, el *Manual* contempla la posibilidad de aplicar unas modificaciones discrecionales y no discrecionales que permiten el aumento o la disminución del nivel de custodia. Las modificaciones discrecionales son un conjunto de factores específicos de clasificación que el personal del DCR puede usar para modificar la puntuación de clasificación de un recluso, siempre que esa modificación esté avalada por un supervisor de clasificación. Asimismo, el *Manual* dispone como sigue:

> Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional.[34]

El *Manual* reconoce como factores que permiten la modificación discrecional a un nivel de custodia más alto, los siguientes: la gravedad del delito; el historial de violencia excesiva; la afiliación prominente con gangas;

---

[33] *Íd.*, Apéndice K.
[34] *Íd.*, Sección III(D) del Apéndice K.

si el confinado es de difícil manejo; los grados de reincidencia; el riesgo de fuga; el comportamiento sexual agresivo; los trastornos mentales o desajustes emocionales; si representa una amenaza o peligro; la desobediencia de las normas o si se rehúsa al plan de tratamiento y, el reingreso por violación de normas.[35] Cabe mencionar que a estos factores también se les asigna una puntuación. De manera que, la sumatoria de todas las valoraciones dará una puntuación final, la cual deberá ser contrastada con la escala provista en *Manual* que determina el nivel de custodia que deberá asignarse.[36]

**- III -**

En este caso, el señor **VALDÉS MELÉNDEZ** cuestiona la determinación del Comité de Clasificación y Tratamiento (CCT) de ratificar su nivel de custodia mediana. En su escrito, el señor **VALDÉS MELÉNDEZ** alega, entre otras cosas, que "al recurrir a la utilización de la "Modificación Discrecional" "Gravedad del Delito" la agencia abusa de su discreción arbitrariamente, coartando de su propósito de rehabilitación según lo dispone el mandato constitucional en su sección 19 del Artículo VI". Evaluado todos los documentos que acompañan el recurso, entendemos que no le asiste la razón.

Surge del expediente, que el señor **VALDÉS MELÉNDEZ** fue sentenciado a ciento noventa y nueve (199) años de reclusión por los delitos de asesinato en primer grado; tentativa de asesinato en primer grado; conspiración; y violaciones a la Ley de Armas de Puerto Rico. Ello en los casos: D OP2011G0047; D VI2011G0076; D VI2011G0078; y D LA2011G0731-D LA2011G0733 ante el Tribunal Superior de Bayamón.

---

[35] *Íd.*

[36] La Escala dispone como sigue:

A.  *Nivel de Custodia Indicado por la Escala . . .*

Mínima = 5 puntos o menos
Mediana = 5 puntos o menos si el confinado tiene una orden de detención, de arresto, u orden de detención por violar la libertad bajo palabra o probatoria.
Mediana = 6-10 puntos en los renglones 1-8
Máxima = 7 puntos o más en los renglones 1-3
Máxima = 11 puntos o más en los renglones 1-8

Véase, Sección III(A) del Apéndice K del *Manual*.

Si bien es cierto que la suma total de los puntos en la escala de clasificación arrojó un resultado que ubica al señor **VALDÉS MELÉNDEZ** en el renglón de custodia mínima, colegimos que el CCT realizó un uso juicioso de su discreción, utilizando los criterios de valoración de clasificación autorizados por el propio *Manual*.

Tras un ponderado análisis del legajo ante nuestra consideración, no hallamos indicador alguno que vislumbre, mucho menos que evidencie, que el Comité de Clasificación y Tratamiento (CCT), al momento de aplicar las modificaciones discrecionales durante la evaluación de reclasificación del señor **VALDÉS MELÉNDEZ,** hubiese actuado de manera arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción. Contrario a ello, notamos que del expediente apelativo emana la existencia de suficientes elementos que nos llevan a concluir que la determinación administrativa está sustentada y/o avalada por *evidencia sustancial*.

No subsiste razón alguna, de hecho, o de derecho, que nos persuada a intervenir y variar el dictamen recurrido. Además, del recurso presentado tampoco se desprende alguna otra prueba que rebata la presunción de corrección que cobija el dictamen administrativo recurrido. Consecuentemente, somos del criterio de que la decisión de CCT de ratificar la custodia mediana fue una apropiada. Así pues, brindamos la deferencia al organismo administrativo y nos abstenemos de intervenir con la determinación recurrida.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* emitida el 25 de septiembre de 2023 por el Comité de Clasificación y Tratamiento (CCT) del Departamento de Corrección y Rehabilitación sobre la clasificación del señor **VALDÉS MELÉNDEZ**.

**Notifíquese inmediatamente**.

**Notifíquese al(a la) señor(a) LUIS D. VALDÉS MELÉNDEZ quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación: Institución Ponce Principal Fase 4-M-Amarilla 319**

**3699 Ponce By Pass Ponce, PR 00728-1500 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones