ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ALFREDO ÁLVAREZ GARCÍA<br><br>Parte Recurrente<br><br><br>v.<br><br><br>JUNTA DE DIRECTORES CONDOMINIO RIO MAR II<br><br>CONSEJO DE TITULARES CONDOMINIO RIO MAR II<br><br>MICHELLE ROBLES ADMINISTRADORA<br><br>Parte Recurrida | KLRA202300342 | *Revisión Judicial,* procedente del Departamento de Asuntos del Consumidor, Oficina Regional de San Juan<br><br><br>Caso Núm.:<br>C-SAN-2022-0011496<br><br><br>Sobre:<br>Condominios |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Romero García y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de septiembre de 2023.

Compareció ante este Tribunal la parte recurrente, Sr. Alfredo Álvarez García (en adelante, el "señor Álvarez" o "Recurrente"), mediante recurso de revisión judicial presentado el 6 de julio de 2023. Nos solicitó la revocación de la *Resolución* emitida por el Departamento de Asuntos del Consumidor (en adelante, "DACo") el 31 de mayo de 2023, notificada al día siguiente. Contra dicho dictamen, el señor Álvarez presentó una solicitud de reconsideración el 20 de junio de 2023, sobre la cual el foro administrativo no actuó dentro del término reglamentario.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* emitida por el DACo.

**I.**

Los hechos del presente caso se originaron el 9 de junio de 2022, cuando el Recurrente presentó una "**Querella**" ante el DACo en contra de la Junta de Directores del Condominio Río Mar II, su presidente, Dr.

Roberto Alfonso y su agente administrador, Sra. Michelle Robles (en adelante, la "Junta" o los "Recurridos"). Mediante la misma, expresó que recibió una factura del seguro del Condominio Río Mar II (en adelante, el "Condominio") correspondiente al apartamento núm. 33D, del cual era el titular, y en la que se desglosaba el porciento de participación en 0.0059 (59%). Añadió que al verificar su escritura de compraventa del referido inmueble y el estudio de título que se realizó en ese momento, el porcentaje correcto de su apartamento era 0.0052 (52%).

Finalmente, arguyó que remitió al presidente de la Junta, a una agente de seguros y al representante legal de la Junta un correo electrónico mediante el cual llamó a la atención del presunto error en el porciento de participación de su propiedad inmueble y solicitó la corrección del mismo. Asimismo, peticionó que se le efectuara un ajuste en la prima del seguro comunal y en el pago de mantenimiento correspondiente. De igual manera, requirió que se le reembolsara cualquier excedente en los pagos por dichos conceptos desde noviembre de 2020. Sostuvo que, debido a que nunca recibió respuesta, recurrió ante el DACo para que adjudicara la controversia habida entre las partes.

Celebrada la vista administrativa en su fondo los días 1 de marzo de 2023 y 21 de abril de 2023, el DACo emitió *Resolución* mediante la cual declaró No Ha Lugar la "**Querella**" interpuesta por el señor Álvarez. Como parte de sus determinaciones de hecho, el foro administrativo expresó que la escritura matriz del Condominio se otorgó el 29 de abril de 1976 y que, en aquel entonces, el valor asignado al apartamento del Recurrente fue de $104,500.00, con un porcentaje de 0.0086%. Asimismo, detalló que posterior al otorgamiento de la escritura matriz el apartamento fue dividido y el porciento se ajustó para reflejar el nuevo valor, asignándole un 0.0059%.

Añadió el DACo que, para efectos del seguro comunal, el porciento que se considera para el cobro de cada apartamento es el correspondiente a la participación a base de superficie y no acorde con el valor del apartamento. Así pues, concluyó que el porcentaje del inmueble del Recurrente a base del criterio de superficie es de 0.052% y que la escritura

matriz nunca fue enmendada posterior a la aprobación de la Ley de Propiedad Horizontal con el propósito de corregir el porcentaje de participación a base del criterio de superficie. Finalmente, concluyó la agencia adjudicadora que la cuota de mantenimiento del Condominio se cobra a base de lo establecido en la escritura matriz que dispone que sea a base del valor del apartamento y que para modificar dicho criterio era necesaria la aprobación del Consejo de Titulares y operaría de forma prospectiva.

Inconforme con dicho dictamen, el señor Álvarez presentó "**Reconsideración**" el 20 de junio de 2023. La misma no fue considerada por el foro administrativo dentro del plazo de quince (15) días, por lo que el 6 de julio de 2023 el Recurrente presentó el recurso de revisión judicial que nos ocupa. Le imputó al DACo la comisión de los siguientes errores:

> **ERRÓ EL DACO EN LA DETERMINACIÓN DE HECHO NÚMERO (4) CUANDO INDICA QUE EL PORCENTAJE ASIGNADO ES 0.0059%.**
>
> **ERRÓ EL DACO EN LA DETERMINACIÓN DE HECHO NÚMERO (5), YA QUE: I) CONTRADICE SUS DETERMINACIONES (3) Y (6), ASÍ COMO SUS CONCLUSIONES DE DERECHO; II) INCLUYE PLANTEAMIENTOS QUE NO EXISTEN EN LA QUERELLA.**
>
> **ERRÓ EL DACO EN LA DETERMINACIÓN DE HECHO NÚMERO (7) AL INDICAR QUE SE SOLICITA EL 0.052% "BAJO EL CRITERIO DE SUPERFICIE".**

El 22 de septiembre de 2023, compareció la Junta y el Consejo de Titulares mediante "**Oposición a Revisión de Decisión Administrativa**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas

gozan de la mayor deferencia por los tribunales. <u>Oficina de Ética Gubernamental v. Martínez Giraud</u>, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. <u>Super Asphalt v. AFI</u>, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". <u>Rivera Concepción v. A.R.Pe</u>, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. <u>P.R.T.C. Co. v. J. Reg. Tel. de P.R.</u>, 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. <u>T-JAC, Inc. v. Caguas Centrum Limited</u>, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. <u>Henríquez v. Consejo Educación Superior</u>, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. <u>Asoc. Vec. H. San Jorge v. U. Med. Corp.</u>, 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. OCS v. Point Guard Ins., 205 DPR 1005, 1027 (2020). No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**[1]

El régimen de propiedad horizontal se ideó en nuestro ordenamiento como el establecimiento de múltiples estructuras jurídicas en una sola estructura física. Es decir, donde antes sólo cabía un dominio, ahora coexisten varios. Serrano Muñoz v. Auxilio Mutuo, 171 DPR 717, 757 (2007). Bajo el esquema de la horizontalidad, la escritura matriz es la "fuente vinculante más importante para los condóminos, luego de la Ley". Trigo Margarida v. Junta Directores, 187 DPR 384, 395 (2012).

De conformidad con lo anterior, una vez inscrita en el Registro de la Propiedad, la escritura matriz gobierna a los titulares y obliga a terceros. Bravman, González v. Consejo Titulares, 183 DPR 827, 845 (2011). La misma es un documento privado "al cual se *adhieren* los titulares cuando compran sus respectivos apartamentos— que *gobierna* a los condóminos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones violen la ley, la moral o el orden público". Íd. (énfasis en el original). Por tanto, la escritura matriz es parte del estado de derecho que ha sido aceptado por los titulares en la medida en que van adquiriendo propiedades sujetas al régimen. Arce v. Carribbean Home Const. Corp., 108 DPR 225, 245 (1978).

Bajo dicho tenor, el Artículo 2 de la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como la "Ley de Condominios", establecía que la escritura matriz "expresará clara y precisamente el

---

[1] Debido a que la controversia gira en torno a una escritura matriz otorgada con anterioridad a la vigencia de la Ley Núm. 129-2020, según enmendada, conocida como la "Ley de Condominios de Puerto Rico", utilizaremos la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como la "Ley de Condominios", para propósitos de disponer del caso que nos ocupa.

destino y uso de toda área comprendida en el inmueble, y, excepto que esta Ley autorice lo contrario, una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento unánime de los titulares". 31 LPRA sec. 1291. De igual manera, el estatuto requería que dicho instrumento público describiera cada apartamento, con número y medidas, situación, pieza de que conste, puerta principal de entrada, lugar con el cual inmediatamente comunique y demás datos necesarios para su identificación. Asimismo, debía constar la superficie total y de acuerdo con ésta, se fijará el porciento de los gastos, ganancias y derechos en los elementos comunes. *Véanse*, Arts. 2, 22, 23 y 24 de la Ley de Condominios, 31 LPRA secs. 1291, 1292, 1292a y 1292b.

Atinente a las controversias que nos atañen, la Asamblea Legislativa aprobó la Ley Núm. 157 de 4 de junio de 1976, con el objetivo principal de enmendar el Artículo 8 de la Ley de Condominios, *supra*, para variar la forma de computar la participación de los apartamentos sobre los elementos comunes del inmueble. "Antes de la enmienda, ese cálculo se realizaba a base del valor de la propiedad privada. Empero, la referida ley dispuso que el criterio para determinar los porcentajes de participación sobre los elementos comunes se debía realizar a base de la superficie de los apartamentos." Trigo Margarida v. Junta Directores, *supra*, pág. 397 (énfasis suplido).

Así pues, el Artículo 8 de dicha ley disponía que el condómino tenía derecho a "una participación con los demás titulares en los elementos comunes del inmueble, equivalente al porcentaje que represente la superficie del apartamiento en la superficie de la totalidad de apartamientos en el inmueble". 31 LPRA sec. 1291f. Ahora bien, la Sección 13 de la Ley Núm. 157 especificó que aquellos inmuebles que estuvieran sometidos al régimen con anterioridad a su vigencia, el nuevo criterio para establecer el porcentaje de participación sobre los elementos comunes solamente sería vinculante "si así lo deciden las dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes". Trigo Margarida v. Junta Directores, *supra*, pág. 397.

**III.**

Antes de examinar los errores señalados por el Recurrente, es indispensable despejar toda duda sobre ciertos aspectos relacionados con las controversias que nos ocupan.

Primeramente, debemos establecer que la prueba presentada ante el foro administrativo reveló que el apartamento del cual el Recurrente es hoy titular fue producto de una segregación de un apartamento de mayor cabida. Nótese, pues, que las circunstancias particulares del caso ante nos son análogas a aquellas a las que se enfrentó el Tribunal Supremo en Trigo Margarida v. Junta Directores, *supra*. Al igual que en dicho caso, la escritura matriz del Condominio en controversia se otorgó antes de la vigencia de la Ley Núm. 157, *supra*, que enmendó las disposiciones la Ley Núm. 104, *supra*, para establecer un nuevo criterio a base de la superficie.

A esos fines, se instituyó un nuevo criterio a base de la superficie del apartamento de que se trate. Como hemos mencionado, en el caso de autos, tal y como sucedió en Trigo Margarida v. Junta Directores, *supra*, la escritura matriz establecía las cuotas a base de un porciento del valor del inmueble. En vista de lo anterior, resolvió el alto foro que aquellos inmuebles que estuvieran sometidos al régimen con anterioridad a la vigencia de la Ley Núm. 157, *supra*, el nuevo criterio para establecer el porcentaje de participación a base de superficie sobre los elementos comunes solamente sería vinculante si así lo decidían dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes. Sobre este respecto, debemos hacer hincapié en que la prueba presentada ante el DACo estableció, sin lugar a dudas, que el Consejo del Condominio no ha aprobado ningún acuerdo para enmendar las disposiciones de la escritura matriz y cambiar del criterio de valor al de superficie, para propósitos del cálculo de las cuotas de mantenimiento.

Establecido lo anterior, pasemos a disponer de los señalamientos de error planteados por el Recurrente.

En primer término, el señor Álvarez sostiene que el DACo erró al efectuar la determinación de hechos número cuatro (4) al establecer que posterior al otorgamiento de la Escritura Matriz del Condominio el apartamento en controversia se le otorgó un porcentaje del 0.059% de su valor para efectos de que lo pagaría en concepto de cuotas de mantenimiento, tras haberse efectuado una segregación del mismo y su configuración cambiara. A esos efectos, argumenta que el porciento correcto debe ser de 0.052%, que fue el asignado en la Escritura Núm. 9 de 12 de octubre de 2020 sobre Compraventa y Hogar Seguro. No le asiste la razón.

De la documentación que surge de los autos y que fue presentada ante el foro administrativo durante la vista en su fondo se desprende que el 0.052% al que el señor Álvarez hace mención está relacionado con el área de superficie que ocupa el apartamento del que es titular sobre el Condominio. Según hemos adelantado, el pago del mantenimiento nunca será de 0.0052% porque ese porcentaje está atado al criterio de superficie que instituyó la Ley Núm. 157, *supra*. Una evaluación sosegada de la transcripción de la prueba oral presentada ante el DACo revela que las cuotas de mantenimiento se cobran a base del valor inicial del apartamento añadiendo los aumentos que se vaya aprobando el Consejo de Titulares en asambleas. Tal y como hemos adelantado, la evidencia demostró que el Consejo de Titulares nunca ha aprobado el cambio de criterio a base de la superficie, en lo que concierne al pago de cuotas de mantenimiento, conforme lo resolvió el Tribunal Supremo en Trigo Margarida v. Junta Directores, *supra*.

En el caso de autos, se estableció que el Condominio fue sometido al régimen de propiedad horizontal el 29 de abril de 1976, fecha anterior a la vigencia de la Ley Núm. 157, *supra*, que sucedió el 4 de junio de 1976. Es, pues, evidente que para que proceda una modificación del criterio actual del valor a uno a base de superficie es indispensable la aprobación de dos terceras partes de los titulares del Condominio que, a su vez, representen dos terceras partes del valor de los elementos comunes. El

expediente ante nos y la prueba presentada ante el DACo está ausente de prueba tendente a establecer dicha modificación, de conformidad con los parámetros mencionados.

De otra parte, el señor Álvarez arguye que el DACo erró al efectuar la determinación de hechos número cinco (5), puesto que contradice las determinaciones números tres (3) y seis (6), así como sus conclusiones de derecho. No tiene razón.

Acorde con todo lo adelantado en los acápites precedentes, el Recurrente falló en establecer la diferencia del criterio utilizado para propósitos del cobro de las cuotas de mantenimiento, el cual, es basado en el valor del apartamento de que se trate, conforme la escritura matriz, y el porciento de superficie que tiene cada inmueble que es el criterio que se utiliza para el pago del seguro del Condominio. No obstante, la prueba vertida demostró que el señor Álvarez desistió de su reclamación relacionada con el cómputo efectuado para el pago del seguro. Siendo esa la realidad jurídica del caso, concluimos que el foro administrativo no se contradijo en sus determinaciones de hechos. Simplemente, lo que se efectuó fue una diferenciación entre un porciento y el otro, en lo que respecta al cobro de cuotas de mantenimiento y de seguro; que como dispusimos, en el caso específico del Condominio en controversia, se calculan de manera distinta.

En el tercer y último señalamiento de error, el señor Álvarez plantea que el ente administrativo incidió al indicar que su solicitud se centró en que la cuota de mantenimiento se efectuara a base del 0.052%, correspondiente a su participación bajo el criterio de superficie. Tampoco le asiste la razón.

La prueba presentada ante el DACo reveló específicamente que esa era la intención del Recurrente al presentar la "**Querella**". Su contención principal estaba centrada en que se le cobraron mal las cuotas de mantenimiento, puesto que el porciento correcto era el 0.052% que disponía la Escritura de Compraventa y Hogar Seguro, a través de la cual advino titular del apartamento 33-D. Sin embargo, según hemos

adelantado, el cobro de cuotas de mantenimiento se efectúa a base del valor que se le otorgó a la propiedad mediante la escritura matriz del Condominio. Igualmente, la prueba arrojó que las cuotas de mantenimiento se han ido aumentando de tiempo en tiempo en respuesta a los cambios en los costos de vida. Por tanto, los cobros de dichas cuotas ni pueden ser estáticos ni pueden responder a otro criterio que no sea aquel dispuesto en la escritura matriz hasta tanto no se cumpla con el proceso de enmienda que requiere nuestro ordenamiento jurídico.

**IV.**

Por los fundamentos que anteceden, se *confirma* la *Resolución* emitida por el DACo el 31 de mayo de 2023.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones