ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARÍA PAGANI MELÉNDEZ<br><br>Parte Recurrida<br><br><br>v.<br><br><br>JUNTA DIRECTORES Y CONSEJO DE TITULARES DEL CONDOMINIO ACQUAMARINA AT ASHFORD 1315<br><br>Parte Recurrente | TA2025RA00253 | *Revisión Judicial,* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.:<br>C-SAN-2024-0019055<br><br><br>Sobre:<br><br>Ley de Condominios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de octubre de 2025.

Compareció ante este Tribunal la parte recurrente, la Junta de Directores y Consejo de Titulares del Condominio Acquamarina at Ashford 1315 (en adelante, la "Junta" o "Recurrente"), mediante recurso de revisión judicial presentado el 25 de septiembre de 2025. Nos solicitó la revocación de la *Resolución* emitida y notificada por el Departamento de Asuntos del Consumidor (en adelante, "DACo") el 27 de mayo de 2025. El referido dictamen fue objeto de una "**Solicitud de Reconsideración**", la cual fue declarada "No Ha Lugar" el 27 de agosto de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida.

**I.**

El caso de epígrafe se originó el 30 de abril de 2024, con la presentación de una "**Querella**" por parte de la Sra. María Pagani Meléndez en contra de la Junta. Mediante la misma, sostuvo que la entidad conocida

como 1315 Ashford 605, LLC (en adelante, "1315 Ashford 605"), titular registral de un apartamento ubicado en el Condominio Acquamarina at Ashford 1315 no podía ostentar el puesto de presidente de la Junta. Sostuvo, además, que fue amenazada de que si la representante de 1315 Ashford 605, Sra. Alexandra Sacha Dewitt (en adelante, "señora Dewitt"), no podía fungir como presidenta, el restante de los miembros de la Junta renunciaría a sus puestos dentro de la misma. En vista de lo anterior, solicitó su renuncia inmediata y la celebración de una reunión extraordinaria para elegir un nuevo presidente (a).

En este contexto, la Recurrente presentó una "**Solicitud de Desestimación e Imposición de Honorarios de Abogados por Temeridad litigiosa**" mediante la cual argumentó que la entidad 1315 Ashford 605 es un miembro incuestionable del Consejo de Titulares del Condominio Acquamarina con facultad para ejercer plenamente sus derechos propietarios, incluyendo el de presidir su Junta de Directores. Señaló que la señora Dewitt y su cónyuge, son los únicos propietarios de la entidad en controversia y que la entidad está exenta por ley de tener junta directiva y su administración se ejerce por sus propietarios. Por tal razón, sostuvo que "se auto-autoriza en todo lo que sea asuntos que se relacionan del inmueble, sin interferencia de otras personas o entidades".[1] Expresó que la señora Dewitt fue electa presidenta de la Junta en la última reunión anual del Consejo de Titulares, en la que actuó en representación de la entidad 1315 Ashford 605 y ejerció los derechos inherentes a su título de propietaria del apartamento 605 de dicho inmueble.

Asimismo, enfatizó que, impugnar la legitimidad de la posición de la señora Dewitt como presidenta de la Junta generaría inestabilidad en el régimen de propiedad horizontal y provocaría la renuncia de todos sus actuales miembros. Alegó, además, que, en la referida reunión, ningún otro titular aceptó ser nominado para la presidencia del Condominio, incluyendo la propia señora Pagani Meléndez. A la luz de lo anterior, solicitó la

---

[1] *Véase*, Apéndice SUMAC TA, Entrada Núm. 3, pág. 3.

desestimación de la "**Querella**" presentada en su contra y la imposición de honorarios de abogado por una cuantía no menor de $10,000.00.

Oportunamente, el 6 de marzo de 2025, la señora Pagani Meléndez presentó su "**Oposición a Solicitud de Desestimación e Imposición de Honorarios de Abogado por Temeridad Litigiosa**" en la que expuso que el Artículo 49 de la Ley Núm. 129-2020, *infra*, establece claramente que, salvo el cargo de vocal, los demás oficiales electos deben pertenecer al Consejo de Titulares. Señaló que la legislación aplicable dispone que, en los casos de titulares corporativos, estos únicamente pueden ser electos para la posición de vocal mediante un representante o apoderado que cuente con un mandato expreso otorgado por escritura pública e inscrito en el Registro de Poderes y Testamentos. Argumentó, asimismo, que los cargos de presidente, secretario y tesorero no pueden ser ocupados por titulares corporativos, razón por la cual la entidad 1315 Ashford 305 carece de capacidad para desempeñar la presidencia de la Junta de Directores del Condominio Acquamarina. En vista de lo anterior, le peticionó al DACo que declarara "Ha Lugar" la "**Querella**".

Finalmente, el 27 de mayo de 2025, el DACo emitió una *Resolución* en la que declaró "Ha Lugar" la "**Querella**" interpuesta por la señora Pagani Meléndez bajo el fundamento de que, conforme Ley Núm. 129-2020, *infra,* el único puesto que un titular corporativo puede ocupar es el de vocal. En consecuencia, ordenó al Consejo de Titulares del Condominio Acquamarina a celebrar una asamblea extraordinaria para seleccionar a un nuevo presidente para la Junta de Directores en un término de sesenta (60) días, a partir de la notificación de la *Resolución.* Insatisfecho con dicha decisión, la Junta presentó una "**Solicitud de Reconsideración**" la cual fue declarada "No Ha Lugar" el 27 de agosto de 2025.

Inconforme con lo anteriormente resuelto, la Recurrente presentó el recurso que nos ocupa mediante el cual le imputó al DACo la comisión del siguiente error:

**ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL RESOLVER QUE EL ARTÍCULO 49 (A)(1) DE LA LEY DE CONDOMINIOS, 31 LPRA § 1922u (A)(1), IMPIDE QUE UNA CORPORACIÓN DE**

**RESPONSABILIDAD LIMITADA OCUPE EL CARGO DE PRESIDENTE EN LA JUNTA DE DIRECTORES DE UN CONSEJO DE TITULARES**

El 6 de octubre de 2025, la señora Pagani Meléndez presento su "**Alegato de Oposición a Recurso de Revisión**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021).

Sin embargo, recientemente, nuestro Tribunal Supremo cambió esta norma de deferencia hacia las decisiones administrativas, al adoptar la opinión del Tribunal Supremo de los Estados Unidos en el caso de Loper Bright Enterprises v. Raimondo, 603 US 369 (2024). En específico, determinó que la interpretación de las leyes es una tarea que le corresponde a los tribunales y dispuso que estos, en el ejercicio de su función revisora, deberán actuar con el rigor que prescribe la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico de 2017 y no ser guiados por la deferencia automática. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR ___.

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (3 LPRA sec. 9675) (en adelante, "la LPAU") dispone que "[l]as determinaciones de hechos de las

decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, deben ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos

es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

No obstante, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

La Ley Núm. 129-2020, según enmendada, mejor conocida como la "Ley de Condominios de Puerto Rico" (en adelante, la "Ley Núm. 129-2020"), 31 LPRA sec. 19211 *et seq.* fue promulgada con el objetivo de "establecer un régimen jurídico que facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno". *Véase*, Exposición de Motivos de la Ley Núm. 129-2020. Así pues, integra disposiciones inspiradas en los avances tecnológicos y en las lecciones derivadas de la crisis económica y de diversas situaciones de emergencia. Íd.

En lo concerniente a la controversia de autos, el Artículo 49 de la referida pieza legislativa dispone que corresponde al consejo de titulares, entre otras cosas, elegir, mediante aprobación de la mayoría, a las personas que integrarán la Junta de Directores. 31 LPRA sec. 1922u. En detalle, dicha disposición lee como sigue:

> Corresponde al Consejo de Titulares:
> a) Elegir, por el voto afirmativo de la mayoría, las personas que habrán de ocupar los siguientes cargos:
> 1) Junta de Directores. — **En los condominios donde concurran más de veinticinco (25) titulares deberá elegirse una Junta de Directores con, por lo menos, un Presidente, un Secretario, y un Tesorero.** El reglamento podrá disponer para puestos adicionales. Los tres (3) directores indicados deberán ser electos por separado a cada puesto. **Salvo el cargo de Vocal, los demás oficiales electos <u>necesariamente</u> pertenecerán al Consejo de Titulares. El apoderado de un titular o el Representante de Titular Corporativo que acredite mandato expreso de éste, por virtud de escritura de poder, conforme establece la**

**ley, e inscrito en el Registro de Poderes y Testamentos, podrá ser electo para ocupar el cargo de Vocal**. Las funciones de Vocal las establecerá el Consejo de Titulares en su reglamento. Los directores responderán personalmente por sus acciones mientras actúen como tales, sólo cuando incurran en delito, fraude o negligencia crasa, siendo el Consejo de Titulares quien posee la causa de acción para reclamar la violación fiduciaria. En cualquier otro caso en que se le imponga responsabilidad pecuniaria a un titular por sus gestiones como director, el Consejo de Titulares cubrirá dichos gastos. El Consejo podrá adquirir pólizas de seguros que cubran estos riesgos. 31 LPRA sec. 1922u (énfasis suplido).

Dicho de otro modo, la precitada norma distingue expresamente entre los cargos que pueden ocupar las personas naturales y aquellos a los que puede aspirar un representante de una entidad corporativa. Dicho texto legal es categórico al disponer que "el único puesto en la junta que un titular corporativo puede ocupar es el de vocal, si es que en el condominio del que se trate existe ese puesto en la junta de directores". M.J. Godreau y M.I. Hernández, El Condominio: El Régimen de Propiedad Horizontal en Puerto Rico, 3ra Ed., Ediciones SITUM, Inc., 2023, pág. 310. Los demás puestos de la junta de directores, a saber, presidente, secretario y tesorero, deben ser ocupados necesariamente por personas naturales que sean miembros del propio Consejo de Titulares. Así, cuando un apartamento pertenece a una corporación o compañía de responsabilidad limitada, el titular es la persona jurídica y no la persona natural que ostente algún puesto dentro de la misma. Por tanto, este último no adquiere la condición de titular a los fines del precitado Artículo 49 y, por consiguiente, no puede ocupar el puesto de presidente, secretario o tesorero. Esto, toda vez que la ley es clara a los efectos de reservar la posibilidad de ocupar los mismos a integrantes del consejo de titulares.

**III.**

En el presente caso, la Junta nos solicitó la revocación de la *Resolución* del DACo en la que se declaró "Ha Lugar" la "**Querella**" presentada por la señora Pagani Meléndez.

Como único señalamiento de error esgrimido, la Recurrente alega que la agencia erró al resolver que el Artículo 49 de la Ley 129-2020, *supra*, impide que una corporación de responsabilidad limitada ocupe el cargo de

presidente en la junta de directores de un consejo de titulares. No nos convence su postura. Veamos.

Del expediente ante nuestra consideración, se desprende que el 17 de junio de 2024 la señora Pagani Meléndez presento una "**Querella**" contra la Junta, alegando que la señora Dewitt, titular de la entidad 1315 Ashford 605, no podía ocupar la presidencia de la Junta, por lo que solicitó su renuncia y la convocatoria de una asamblea extraordinaria.

En respuesta a ello, la Recurrente presentó una *Moción de Desestimación* en la que argumentó que la mencionada entidad es miembro legítimo del Consejo de Titulares y que la señora Dewitt, como su propietaria, había sido válidamente electa como presidenta en la última asamblea anual. Posteriormente, el 6 de marzo de 2025, la Recurrida presentó su *Oposición*, sosteniendo que el Artículo 49 de la Ley Núm. 129-2020, *supra*, dispone que los cargos de presidente, secretario y tesorero deben ser ocupados exclusivamente por titulares en su carácter personal y que los titulares corporativos solo pueden ser representados para ocupar el cargo de vocal.

El 27 de mayo de 2025, DACo emitió una *Resolución* declarando "Ha Lugar" la "**Querella**" y ordenó al Consejo de Titulares a convocar una asamblea extraordinaria para elegir un nuevo presidente en un plazo de sesenta (60) días.

Conforme adelantáramos en los acápites anteriores, la Ley Núm. 129-2020, *supra*, dispone que los cargos de presidente, secretario y tesorero de la junta de directores deben ser ocupados exclusivamente por miembros del consejo de titulares. 31 LPRA sec. 1922u. En cambio, establece que los titulares corporativos únicamente pueden participar en la Junta mediante un representante autorizado, pero limitándose al cargo de vocal, cuando así el reglamento del condominio lo establezca. Íd.

Tras un análisis, detallado y comprensivo del expediente apelativo ante nuestra consideración, incluyendo la "**Querella**", la *Moción de Desestimación*, su correspondiente *Oposición* y la *Resolución* aquí recurrida, hemos arribado a la conclusión de que el DACo actuó

correctamente al determinar que la señora Dewitts no puede ocupar la presidencia de la Junta del Condominio Acquamarina. Nos explicamos.

Del legajo apelativo se desprende que el Condominio Acquamarina es de carácter residencial y se encuentra sometido al régimen de propiedad horizontal. Consta, además, que la señora Dewitt y su esposo son los únicos propietarios de la entidad 1315 Ashford 605, la cual figura como dueña registral del apartamento 605 del referido condominio. Surge también del expediente que, en la última asamblea anual de titulares, la señora Dewitt fue electa presidenta de la Junta de Directores.

No obstante lo anterior, el análisis comprensivo de las disposiciones del Artículo 49 de la Ley Núm. 129-2020, *supra*, conduce a la conclusión de que el legislador fue claro al reservar los cargos de presidente, secretario y tesorero a las personas naturales que formen parte del consejo de titulares. A los representantes de titulares corporativos o entidades jurídicas el estatuto únicamente les reconoce la posibilidad de ocupar el cargo de vocal, siempre y cuando medie el mandato expreso, conforme dispone la ley. En este contexto, resulta indiscutible que, al ser el apartamento 605 propiedad de una compañía de responsabilidad limitada, la verdadera titularidad recae sobre la persona jurídica y no sobre la señora Dewitt como individuo, por lo que esta última carece de legitimación para ocupar el puesto de presidenta de la Junta.

Lo anterior implica que, aun cuando el consejo de titulares la eligió para dicho cargo, esa designación resulta jurídicamente ineficaz por contradecir el texto expreso y claro del estatuto aplicable. La normativa vigente delimita que solo las personas naturales pueden ocupar los cargos principales de la Junta, reservando a los representantes de titulares corporativos o entidades jurídicas únicamente la posición de vocal. Permitir lo contrario significaría extender indebidamente una excepción legal manifiesta y abrir la puerta a interpretaciones contrarias al marco legal aplicable, debilitando así la correcta organización del régimen de propiedad horizontal. Asimismo, evitamos que por *fiat* judicial cambiemos el texto expreso de la ley para atribuirle una interpretación distinta a lo que la

Asamblea Legislativa acogió y aprobó como parte de sus poderes constitucionales.

Así pues, luego de un análisis detenido del caso de epígrafe, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, concluimos que procede darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de la agencia administrativa. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

En suma, coincidimos con la opinión del DACo respecto a que la elección de la señora Dewitt como presidenta de la Junta de Directores es inválida, conforme al Artículo 49 de la Ley Núm. 129-2020, *supra.* Por lo tanto, concluimos que corresponde la celebración de una asamblea extraordinaria para elegir un nuevo presidente o presidenta conforme al derecho vigente.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones