ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ<br><br>Parte Recurrente<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2025RA00264 | *Revisión Judicial,* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>Q-265-25<br><br>Sobre:<br>Respuesta de Reconsideración<br><br>(Situación Médica) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de octubre de 2025.

Compareció ante este Tribunal la parte recurrente, el Sr. Eliezer Santana Baez (en adelante, el "señor Santana Baez" o "Recurrente"), mediante recurso de revisión judicial presentado el 25 de septiembre de 2025. Nos solicitó la revocación de la *Determinación* emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (en adelante, "DCR" o "Recurrido") el 11 de junio de 2025, notificada y archivada en autos el 13 del mismo mes y año. El referido dictamen fue objeto de una "**Solicitud de Reconsideración**", la cual fue declarada "No Ha Lugar" el 19 de agosto de 2025.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, prescindimos de la comparecencia de la parte recurrida, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal,[1] y por los fundamentos que expondremos a continuación, se *confirma* la

---

[1] *Véase*, Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, <u>In re Aprob. Enmdas. Reglamento TA</u>, 2025 TSPR 42, pág. 15, 215 DPR __ (2025).

*Determinación* del DCR. Asimismo, declaramos "Ha Lugar" la solicitud para litigar como indigente (*in forma pauperis*).

**I.**

El caso de epígrafe tuvo su génesis el 27 de mayo de 2025, con la presentación de una "**Solicitud de Remedios Administrativos**" por parte del señor Santana Báez ante el DCR. Mediante la misma, solicitó ser evaluado por un cirujano externo, toda vez que se le denegó la remoción del material de silicona de sus glúteos. El 11 de junio de 2025, el DCR emitió una "**Respuesta al Miembro de la Población Correccional**" mediante la cual declaró "No Ha Lugar" la referida petición, ya que el Recurrente fue evaluado por un cirujano, el cual determinó que este no presentaba signos actuales de inflamación, infección activa, enrojecimiento ni fiebre. Además, se destacó que la región glútea se encontraba sin alteraciones significativas.

Insatisfecho con dicha decisión, el señor Santana Báez presentó una "**Solicitud de Reconsideración**" ante el Coordinador Regional de Remedios Administrativos, la cual fue acogida el 8 de julio de 2025. Así las cosas, el 19 de agosto de 2025, el DCR emitió una *Resolución* en la que denegó dicha moción bajo el fundamento de que el Recurrente debía agotar los trámites administrativos disponibles antes de radicar una Solicitud de Remedios Administrativos ante el DCR. Destacó que, una vez la hoja conocida como "**Registro de Quejas y Situaciones identificadas**" es llenada y contestada, puede entonces radicar una solicitud ante el DCR.

Inconforme con lo anteriormente resuelto, el Recurrente acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló que el DCR cometió el siguiente error:

> Erró el DCR al imponer como requisito previo para radicar una solicitud de remedio y su posterior reconsideración tengo que agotar otro tr[á]mite previo de queja y situaciones identificadas para así darme el servicio al cirujano que requiero para extraer y drenar de mi cuerpo el silicón, cuando la ley del congreso y la LPAU no creó tres pasos, solo dos.

**II.**

**A.**

El Artículo VI, Sección 19 de nuestra Carta Magna establece la política púbica del Estado de "reglamentar las instituciones penales para

que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1.

De conformidad con dicho axioma constitucional, el Artículo 2 del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el "Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011", 3 LPRA Ap. XVIII (en adelante, el "Plan de Reorganización), dispone que:

> La política pública del Gobierno de Puerto Rico a través de la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2.

A tenor con las disposiciones del Artículo 7, inciso (aa), del Plan de Reorganización, el DCR tendrá la facultad para:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA Ap. XVIII, Art. 7 (aa).

De conformidad las facultades anteriormente detalladas, el DCR adoptó el Reglamento Núm. 8583. El mismo creó la DRA con el objetivo de atender cualquier queja o agravio existente entre confinados y el DCR o sus funcionarios, mediante la presentación de una solicitud de remedio.[2] Además, para ofrecerle a un confinado la alternativa de que un organismo administrativo atienda en primera instancia sus solicitudes de remedio, de modo que se reduzca la radicación de pleitos en los tribunales por esa razón.

---

[2] Introducción al Reglamento Núm. 8583.

**B.**

En nuestro ordenamiento jurídico, la doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que se circunscribe a que los tribunales, discrecionalmente, se abstengan de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, de manera tal, que la determinación administrativa refleje la postura final de la agencia. Colón Rivera *et al.* v. ELA, 189 DPR 1033, 1057 (2013). De ordinario, su aplicación se realiza en aquellos casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible. Procuradora Paciente v. MCS, 163 DPR 21, 35 (2004). La misma se invoca para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste y que luego recurrió al foro judicial, aunque aún tenía remedios administrativos disponibles. Mun. de Caguas v. AT&T, 154 DPR 401, 408 (2001).

La necesidad de agotar los remedios administrativos antes de acudir al foro judicial es un requisito jurisdiccional que impide la intervención judicial hasta tanto no hayan sido agotados todos los remedios administrativos disponibles al nivel de la agencia. Guzmán y otros v. ELA, 156 DPR 693, 714 (2002). Esto es así, pues la determinación administrativa es la que reflejará la postura final de la agencia.

De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. AAA v. UIA, 200 DPR 903, 914 (2018). Por tanto, la doctrina de agotamiento de remedios administrativos no puede ser

preterida, salvo que se configure alguna de las limitadas excepciones, a saber:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673.

A luz de lo anterior, se ha establecido que "la parte que pretende acudir al foro judicial [debe] probar, **mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos**". Oficina Paciente v. MCS, 163 DPR 21, 36 (2004) (énfasis suplido). Esto, puesto que lo que pudiera resolver la agencia administrativa con relación a tales planteamientos constitucionales también estaría sujeto a ser revisado en su momento por el Tribunal de Apelaciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655.

## C.

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021).

Sin embargo, recientemente, nuestro Tribunal Supremo cambió esta norma de deferencia hacia las decisiones administrativas, al adoptar la opinión del Tribunal Supremo de los Estados Unidos en el caso de Loper

Bright Enterprises v. Raimondo, 603 US 369 (2024). En específico, determinó que la interpretación de las leyes es una tarea que le corresponde a los tribunales y dispuso que estos, en el ejercicio de su función revisora, deberán actuar con el rigor que prescribe la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico de 2017 y no ser guiados por la deferencia automática. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR ___.

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (3 LPRA sec. 9675) (en adelante, "la LPAU") dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999).

Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, deben ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

No obstante, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**III.**

En el presente caso, el señor Santana Báez nos solicitó la revocación de la *Determinación* del DCR a través de la cual se le denegó su solicitud de ser evaluado por un cirujano distinto para proceder con la extracción del material de silicona presente en sus glúteos.

Como único señalamiento de error esgrimido, el Recurrente sostiene que el DCR erró al imponerle un requisito previo para radicar su "**Solicitud de Remedio**" y su posterior "**Moción de Reconsideración**". No nos convence su postura. Veamos.

Del expediente ante nuestra consideración se desprende que, el 27 de mayo de 2025, el señor Santana Báez presentó una "**Solicitud de Remedios Administrativos**" ante el DCR solicitando ser atendido por otro

cirujano, puesto que el médico que lo evaluó le denegó la remoción del material de silicona de sus glúteos. El 11 de junio de 2025, el DCR emitió una "**Respuesta al Miembro de la Población Correccional**" en la que denegó la petición del Recurrente, toda vez que este ya había sido atendido por el Dr. Marcos Devarie, el cual determinó que no existían alteraciones significativas en la zona de los glúteos, por lo que no era necesario remover el referido material.

Inconforme con dicha determinación, el señor Santana Baez presentó una "**Solicitud de Reconsideración**" la cual fue declarada "No Ha Lugar" mediante *Resolución* de 19 de agosto de 2025. En detalle, el DCR expuso que el Recurrente no había agotado todos los remedios administrativos disponibles en ley para presentar su "**Solicitud de Remedios Administrativos**".

Conforme adelantáramos en los acápites anteriores, la doctrina de agotamiento de remedios administrativo dispone que los tribunales no intervendrán hasta que la parte afectada haya utilizado todos los recursos disponibles ante la agencia. Colón Rivera *et al.* v. ELA, *supra*, pág. 1057. Lo anterior responde a que la determinación administrativa es la que reflejará la postura final de la agencia.

Tras un análisis minucioso y comprensivo del expediente apelativo ante nuestra consideración, incluyendo la "**Solicitud de Remedios Administrativos**", la "**Respuesta al Miembro de la Población** Correccional", la *Determinación* y la *Resolución* sobre la solicitud de reconsdiración, hemos arribado a la conclusión de que el DCR actuó correctamente al denegar la petición del señor Santana Báez. Nos explicamos.

En el presente caso, el Recurrente fue evaluado por un médico que no encontró alteraciones significativas que justificaran la remoción del material silicona de su cuerpo. Esto pues, dicho galeno no observó signos de inflamación, infección activa, enrojecimiento ni fiebre. Aun así, el señor Santana Báez presentó una "**Solicitud de Remedios Administrativos**" en

la que expresó su deseo de ser evaluado por un médico externo para que le elimine el referido material que tiene implantado en sus glúteos.

No obstante lo anterior, el Recurrente no cumplió con su obligación de agotar los remedios administrativos disponibles ni de expresar hechos específicos y bien definidos para prescindir de los remedios administrativos existentes ante el DCR, como requisito indispensable antes de presentar una "**Solicitud de Remedios Administrativos"** y subsiguientemente, acudir a la vía judicial. En específico, no presentó la hoja conocida como "**Registro de Quejas y Situaciones Identificadas**", documento que permite a los miembros de la población correccional solicitar el *status* de los referidos a especialistas. Esto es, dicha hoja les permite canalizar sus reclamos y solicitar evaluaciones médicas especializadas. En otras palabras, el Recurrente no aprovechó todos los procedimientos internos que el área médica provee.

Solo después de realizado este trámite y recibido una respuesta, el señor Santana Báez podía presentar formalmente una "**Solicitud de Remedios Administrativos"**. Al omitir este procedimiento, el Recurrente interrumpió el curso regular del proceso administrativo, impidiendo que el DCR pudiera atender su reclamo y resolver la controversia en primera instancia. Así pues, su actuación interfirió con la postura final de la agencia.

En suma, somos de la opinión de que el DCR actuó correctamente al denegar la petición del señor Santana Báez, puesto que el mismo no agotó todos los remedios administrativos disponibles para atender su queja. Así pues, luego de un análisis detenido del caso de epígrafe, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, concluimos que procede darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de la agencia administrativa. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones