ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| HÉCTOR ROMÁN MONTAÑEZ, Y OTROS<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026RA00071 | *Revisión Judicial,* procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br><br>Suspensión de Privilegios<br><br>Regla 9 del Reglamento Núm. 9221 de 8 de octubre de 2020 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2026.

Compareció ante este Tribunal la parte recurrente, el Sr. Héctor Román Montañez (en adelante, "el señor Román Montañez" o el "Recurrente"), quien se encuentra confinado en la Institución Correccional Guerrero Aguadilla, mediante recurso de revisión judicial presentado el 19 de febrero de 2026. Nos solicitó la revocación de la *Determinación* emitida y notificada por el Departamento de Corrección y Rehabilitación (en adelante, "DCR") el 6 de febrero de 2026. A través del referido dictamen, el DCR aplicó la extensión de la Regla 9 del Reglamento Núm. 9221, *infra*, y suspendió las visitas a los confinados del Módulo 8A-11 de dicha institución carcelaria, con excepción de los abogados y/o representantes de de dicha agencia.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, prescindimos de la comparecencia de la parte recurrida, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal, y autorizamos la "**Solicitud para Litigar como Indigente**", y por los

fundamentos que expondremos a continuación, confirmamos la *Determinación* impugnada.

**I.**

El 27 de enero de 2026, se llevó a cabo un operativo de registro proforma en el Edificio 8 de la Institución Correccional Guerrero 304, ubicada en el Municipio de Aguadilla. Posteriormente, el 28 de enero de 2026, se notificó a los confinados del Módulo 8A-11 la aplicación de la Regla 9 del Reglamento Núm. 9221, *infra*, y la consecuente suspensión de privilegios, como resultado del operativo efectuado y de la ocupación de diversos artículos considerados como contrabando, así como de las incautaciones que se extendieron desde el 28 de enero de 2026 hasta el 5 de febrero de 2026. En específico, se dispuso la prohibición de recibir paquetes y de realizar compras en la comisaría, limitándose la venta exclusivamente a artículos de higiene personal tales como desodorante, jabón, champú, pasta y cepillo dental, productos de la comisaría central, navajas de afeitar y materiales necesarios para el acceso a los tribunales.

Asimismo, se restringió la participación en actividades especiales, la recreación activa, el uso de televisor, la correspondencia no legal, las visitas y cualquier otro privilegio concedido dentro de la institución. El 30 de enero de 2026, los confinados del Módulo 8-A2 presentaron una "**Solicitud de Desestimación, Archivo y Referido al SAIC**", en la cual sostuvieron que el registro efectuado resultó contrario a derecho y en violación del debido proceso de ley. Alegaron, además, que las ocupaciones descritas correspondían a celdas individuales específicas y no a un área común o compartida que justificara la imposición de una medida disciplinaria de carácter colectivo al amparo de la Regla 9 del Reglamento Núm. 9221, *infra*. Al día siguiente, se celebró la correspondiente vista disciplinaria.

Así las cosas, el 5 de febrero de 2026, el DCR emitió una *Determinación* mediante la cual extendió la suspensión de privilegios como medida de seguridad desde el 6 de febrero de 2026 hasta el 7 de marzo de 2026. Inconformes con dicha decisión, los confinados presentaron una "**Solicitud de Reconsideración**", la cual no fue acogida por la agencia.

Aun insatisfecho, el Recurrente acudió ante este Tribunal mediante el recurso de epígrafe, alegando que el DCR erró al imponer una suspensión colectiva de privilegios.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial,

cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la

que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

El Artículo VI, Sección 19 de nuestra Carta Magna establece la política púbica del Estado de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1.

De conformidad con dicho axioma constitucional, el Artículo 2 del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el "Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011", 3 LPRA Ap. XVIII (en adelante, el "Plan de Reorganización), dispone que:

> La política pública del Gobierno de Puerto Rico a través de la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de

ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2.

A tenor con las disposiciones del Artículo 7, inciso (aa), del Plan de Reorganización, el DCR tendrá la facultad para:

[A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA Ap. XVIII, Art. 7 (aa).

De conformidad las facultades anteriormente detalladas, el DCR adoptó el Reglamento Núm. 9221 de 8 de octubre de 2020, conocida como el "Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional". El mismo fue aprobado con el propósito de aportar a la rehabilitación de los miembros de la población correccional y a su vez, mantener el orden y la seguridad institucional. En lo concerniente al caso de autos, la Regla 9 del referido Reglamento establece las circunstancias específicas bajo las cuales la autoridad institucional puede suspender privilegios como medida de seguridad, cuando medien situaciones que comprometan el orden o la seguridad institucional. En detalle, la aludida Regla lee como sigue:

1. El Superintendente de la institución correccional podrá suspender los privilegios, sin celebración de vista administrativa, por un periodo de tiempo que no exceda a diez (10) días calendarios, en aquellas circunstancias que atenten contra la seguridad institucional. El Superintendente no podrá extender el término expresamente dispuesto en este inciso. Bajo ninguna circunstancia, esta disposición podrá ser utilizada por el Superintendente de la institución correccional como medida disciplinaria.
2. Queda prohibida la cancelación del privilegio de visita a un grupo, unidad de vivienda, edificio o institución como medida disciplinaria. Sin embargo, esto no impedirá la suspensión de este privilegio cuando existan otras razones que no sean de índole disciplinario que así lo requieran y que estén en total acorde con las circunstancias específicamente establecidas para afianzar la seguridad. En estos casos, deberá entenderse que la suspensión de privilegios responde estrictamente a una medida de seguridad y no a una medida disciplinaria.
3. El Superintendente deberá notificar por escrito a la Oficina de Asuntos Legales la acción tomada dentro del próximo día laborable de haber tomado la acción. El Director de la Oficina

de Asuntos Legales o su representante, referirá el asunto a la Oficina de Investigaciones del Sistema Correccional (OISC). La investigación será conducida por la Oficina de Investigaciones del Sistema de Correccional (OISC), con el propósito de determinar si existe justa causa para extender la suspensión de privilegios por razones de seguridad. Los privilegios podrán ser suspendidos por razones de seguridad, bajo una de las siguientes circunstancias:

a. En caso de motín, fuga, disturbio, su tentativa o cualquier otra actividad o evento que ponga en riesgo la seguridad, la tranquilidad el normal funcionamiento institucional. Esto incluye, pero sin limitarse a, cualquier amenaza contra la integridad física o la propiedad de un miembro de la población correccional, o cualquier otra persona, o contra seguridad de la institución correccional.

b. Cuando ocurra una agresión a un miembro de la población correccional y la misma sea ejecutada por seis (6) o más miembros de la población correccional.

c. Cuando un módulo o unidad de vivienda de la institución correccional se niegue o se resista a someterse a las pruebas de detección de sustancias controladas, alcohol o cualquier otra prueba que se utilice para estos propósitos o impida que pueda llevarse a cabo dicha prueba.

d. **Cuando ocurran hallazgos de cualquier contrabando peligroso, tal como armas de fuego, sustancias controladas, artefactos explosivos o cualquier otro material prohibido por ley o reglamento.** *Véase*, Regla 9 del Reglamento Núm. 9221, *supra.* (Énfasis suplido).

**III.**

En el presente caso, el señor Román Montañez nos solicitó la revocación de la *Determinación* del DCR mediante la cual se impuso y posteriormente se extendió la suspensión de privilegios a los confinados del Módulo 8A-11.

En síntesis, el Recurrente plantea que el DCR erró al extender la referida suspensión, aduciendo que el registro efectuado fue contrario a derecho y vulneró su derecho a un debido proceso de ley. Sostiene, además, que las ocupaciones realizadas durante el operativo correspondían a celdas individuales específicas y no a un área común o compartida del módulo, por lo que, a su juicio, no procedía la imposición de una medida disciplinaria de carácter colectivo.

Tras un examen ponderado e integral del expediente que obra ante nuestra consideración, hemos arribado a la conclusión de que la actuación

del DCR estuvo dentro del marco de su autoridad y resultó razonable a la luz de la documentación disponible. Nos explicamos.

Del expediente ante nuestra consideración surge que, como resultado del operativo realizado en la unidad correccional concernida, se ocuparon diversos artículos cuya posesión está expresamente prohibida dentro de la institución. En particular, se halló (1) polvo de aparente sustancia controlada dentro de una celda; (2) un envase negro que contenía una aparente sustancia, ubicado en una esquina de la misma; (3) un teléfono celular marca L8 Star; (4) una tarjeta de memoria de 32 GB y (5) un cable oculto dentro de un envase de desodorante. La naturaleza de los objetos incautados, especialmente la presencia de un dispositivo de comunicación y posibles sustancias controladas, representa una amenaza directa a la seguridad institucional, al orden interno y a los protocolos de custodia que rigen el funcionamiento del sistema correccional en cuestión.

Ante ese cuadro fáctico, el DCR determinó suspender ciertos privilegios como medida de seguridad, incluyendo restricciones en visitas, recreación, uso de televisor, correspondencia no legal y limitaciones en compras de comisaría. Dicha *Determinación* se encuentra dentro de la amplia facultad que posee la referida agencia para adoptar medidas preventivas dirigidas a preservar la seguridad y disciplina institucional.

Además, no podemos perder de perspectiva que los establecimientos penitenciarios constituyen entornos altamente reglamentados, donde la seguridad colectiva reviste un interés apremiante del Estado. En este contexto, la evaluación sobre el alcance de una medida disciplinaria o preventiva descansa primariamente en la pericia administrativa del DCR, quien cuenta con el conocimiento especializado para valorar los riesgos que conllevan este tipo de hallazgos.

Así pues, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o

9

pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *confirmamos* la *Determinación* emitida por el DCR.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones